## Potts v. Potts.

Jan. 19, 1945.

J. A. Edge for appellant.

A. B. Thomason for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

A decree of divorce was granted Mrs. Mary Burgin Potts from her husband, H. H. Potts, in 1935. The judgment directed reciprocal restoration of property each had acquired by reason of the marriage relation. Sec. 425 Civil Code Prac.; Sec. 2121, Ky. Stats., now Kentucky Revised Statutes, 403.060. No alimony was asked or awarded. In 1940, Potts sued his former wife seeking to enforce the judgment of restoration, especially to have her reconvey to him a half interest in a farm and in a valuable dairy herd, or to have an accounting if the property had been disposed of by the defendant. She offered no affirmative defense nor asked any affirmative relief. The result was a judgment for the plaintiff in the sum of $5,439.19, with interest from January 1, 1937. It was rendered September 27, 1941. An execution was levied on certain property of the defendant and notice thereof put to record. The suit was No. 25077 in the circuit court.

In December, 1942, Potts filed another suit against his former wife to have his execution lien adjudicated and the property sold to satisfy it. The defendant interposed an affirmative defense with respect to the property involved in the first suit, and as a set-off and counterclaim she sought to recover $10,000 alimony if the judgment therein should be enforced, and to recover $5,700 alleged to have been paid by her as surety for her husband, her individual property having been mortgaged as security. The court ruled that all of the defenses were res adjudicata and the defendant had no right to assert them in that suit. The case was No. 27609. We affirmed the judgment. Potts v. Potts, 298 Ky. 99, 100, 181 S. W. 2d 393.

The present appeal is from the judgment rendered in the first suit, case No. 25077. An appeal was granted by this court on September 1, 1943.

1. The appellee has moved to dismiss the appeal upon two grounds:

(a) One is that as the appellant did not question the correctness or validity of the judgment in the second suit, case No. 27609, but undertook therein to invoke the same defenses now claimed to be available in No. 25077, she is barred from appealing from the judgment. The point is not well taken. The Code provides that a litigant not under legal disability may have an appeal granted by this court within two years next after his right of appeal accrued, which is from and including the day on which the judgment was rendered. Secs. 734, 745, Civil Code of Practice. Obviously, this appeal is in time. The fact that meanwhile the appellant had unsuccessfully sought to avoid the judgment in the circuit court by asserting a set-off and counterclaim cannot affect her right to have the judgment reviewed on appeal as provided by the Code.

(b) The other ground for dismissal is that this court has no jurisdiction because meanwhile the appellant has been adjudicated a bankrupt and all title to her assets, particularly her right or interest in the property received by reason of the marriage relation but adjudged against her in this restoration suit, had passed to her trustee in bankruptcy. It is claimed by the appellee that the trustee alone has the right to question the judgment which had the effect of denying the appellant's

affirmative claims, as well as saving her bankrupt estate from the satisfaction of the adverse judgment. The appellant's bankruptcy proceedings reached the United States Circuit Court of Appeals, whose opinion, In re Potts, 6 Cir., 142 F. 2d 883, recites that they had been commenced by Mrs. Potts primarily for the purpose of obtaining relief from this judgment. It appears in that opinion, as it does in that of the District Court, In re Potts, 47 F. Supp. 990, that the appellant was asserting the same claims against her former husband and to the judgment as constituting assets and was denying his claims to be legitimate. It may be observed that the United States Circuit Court held the judgment in the lien enforcement or foreclosure suit, which we affirmed, to be void because the State Court had lost jurisdiction by reason of the bankruptcy proceedings. Yet, the court ruled that the ex-husband was a lien creditor since the levy of the execution was more than four months before the filing of the petition in bankruptcy.

The question is: May one after having been adjudged a bankrupt perfect and prosecute an appeal from a judgment rendered before the bankruptcy proceedings were commenced, or is the right vested only in the trustee in bankruptcy? We have several old cases holding that the bankrupt may not, but they were rendered before the present bankruptcy law was enacted. It is now quite uniformly held under the present Bankruptcy Act, 11 U. S. C. A. sec. 1 et seq., that if the trustee does not assert his superior right to prosecute an appeal from a judgment in a State Court against the bankrupt, or does not object, the bankrupt may do so prior to his discharge. 6 Am. Jur., Bankruptcy, Sec. 342.5; 8 C. J. S., Bankruptcy, Sec. 212; Cf. Ray's Trustee v. Ray's Assignee, 237 Ky. 789, 36 S. W. 2d 624; Felty v. Olwan, 284 Ky. 762, 145 S. W. 2d 1059.

In Bennett v. Bennett, 65 S. W. 12, 23 Ky. Law Rep. 1281, where one of several defendants against whom judgment had been rendered was adjudged a bankrupt after an appeal therefrom had been granted, we held he did not thereby waive his appeal or forfeit his right to prosecute it, saying: "He could have prosecuted his appeal simultaneously with his petition in bankruptcy, or he could wait, and take out his appeal within two years from the rendition of the judgment. True, if he recovers an interest in the land, it may be subjected by his as-

signee by proper proceedings; but he has not lost his right to appeal by going into bankruptcy, for in the end that proceeding might be entirely fruitless, and then he could have no relief from the judgment.''

No objection has been raised by the trustee in bankruptcy to the prosecution of this appeal by the bankrupt. The time for taking the appeal had nearly elapsed and it may be well assumed that the trustee was not interested and waived his primary right.

The motion to dismiss the appeal is, therefore, overruled.

2. The appellant, Mrs. Potts, contends that the judgment is palpably erroneous, primarily because she furnished all the money with which the property adjudged to have been obtained by her ''from and through'' her husband ''during marriage in consideration or by reason thereof'' was acquired, and that her former husband never had any beneficial interest in it. The parties were married in 1899. The young husband then had a horse and a few hogs and calves. The first year he rented some land on shares from his mother and the next year rented some land from her father. The third year they bought a place for $2,300. Her father or brother gave or advanced her $1,000 of the purchase price, and, though she denies it, we think it established that the husband put in the same sum. The balance of $300 was paid from the products. Title was taken in them jointly. During the ensuing years they bought and sold ten or twelve different farms or tracts and made money on all but two of the transactions. Title to all of them was taken jointly, except two, but when they were sold the proceeds were put into the common fund. The parties conducted the farms and trades cooperatively. In 1922, they purchased a farm of 118.55 acres in Fayette County at a cost of over $26,000 and operated a dairy on it. On November 16, 1931, Potts conveyed his undivided interest in this land to his wife. He also transferred his interest in the dairy herd to her. The deed recites a nominal consideration. There was then a mortgage on the place of $5,700, plus considerable interest, and Potts owed some money expended for improvements and machinery. In 1933 Potts left his home and when a year had elapsed his wife sued him for divorce. He made no defense and the judgment was rendered March 22, 1935, as we have stated. In January, 1937, Mrs. Potts sold the

farm for $12,500 cash and property in Lexington valued at $7,000. She paid all the debts out of the proceeds. She sold the dairy herd for $700. Potts did not consult a lawyer about his domestic difficulties until sometime in 1940. He later brought this suit to have his half interest in the property restored in accordance with the divorce judgment.

A great deal of proof was taken, but much of it was to establish the value of the farm in 1931, when the conveyance had been made. The master commissioner carefully analyzed and reviewed the evidence and reported that Mrs. Potts had put into the common fund $4,000 more than her husband, which money it appears she had received from her father's estate. He recommended that she should be credited with the payment of the debts and allowed $2,000 credit because of this added sum, and that the balance should be divided equally. In thus balancing the equities, the husband's share was calculated at $5,439.19. The court reviewed the record on exceptions, confirmed the commissioner's report, and awarded judgment for that sum, with interest from January 1, 1937, in favor of the husband.

Mrs. Potts portrayed her former husband as a drone or a sort of Rip Van Winkle. Her testimony is quite exaggerated, vicious and inconsistent in many respects. It reveals her as a strong, dominating character, who, according to her own testimony, conducted all the business transactions of the family and did most of the manual labor throughout their married life. There can be no doubt that she was the boss. But the husband introduced many substantial witnesses, former neighbors and bankers, who testified that he was a hard-working, industrious, resourceful and frugal man, sober and of good habits. He had all the credit he needed or wanted at the banks. One former banker stated: "I don't think he ever spent a nickel foolishly in his life." The plaintiff testified that his wife also worked hard, was economical and helped build up the family estate. There was nothing unkind or critical in his testimony, except that he said she was mean to him and nagged him so much that he often stayed in the barn, even in very cold weather, in order to escape her. Finally, he testified, he could stand it no longer and deeded his interest in the property to her. The purchase of peace in such an instance cannot be regarded in the eyes of the law as a valuable consid-

eration although one may at the time have regarded it as a good trade. Even that consideration seems to have failed, for two years later Potts just walked off and left everything he had to her. Mrs. Potts denied the charges of nagging and fussing and testified that she only endeavored to talk with him but he would get up and leave the house. When he prepared to go away she told him he should stay and help pay off the mortgage, but he would not do it. Mrs. Potts testified that during the two years intervening between the conveyance and his abandonment, she hired her husband and paid him $3 a week and his board and clothing.

In response to the appellant's contention in her brief that the conveyance was made in contemplation of separation and divorce and is, therefore, legal and should be sustained, we need only to quote her testimony: "I told him to go—I told him to hire a boy and let me manage it and I would have that debt paid inside of three years * * *. I told him to lay down in the yard or anywhere he wanted to and I would pay the debt off." Upon further examination she was asked if she did not agree to waive any claim for alimony if he would convey his half interest in the land to her, and she answered: "No; but he would have had his interest if he had stayed there, the same as I did. If he had remained there—and I told him that, as long as you are here it is as much to you as it is to me and we will go ahead and pay off the mortgage, and he wouldn't do it, and I told him then we would divide up and give him half and me take half, and him do as he pleased with it after we got the farm paid for, and he got up and walked off and left me and wouldn't do it."

In our review, we start with the presumption that money or other property received by a husband or wife from or through the other was by reason of the marriage relation, and the burden rests upon the other party to overcome the presumption. Pope v. Pope, 148 Ky. 30, 146 S. W. 410. Furthermore, one who appeals from a judgment must overcome the presumption of its correctness and propriety and convince this court that it is erroneous. Independent of the presumptions, we have reached the conclusion that the judgment was right on the issue of whether the former wife received the property involved under circumstances requiring restoration.

There is no evidence upon which to base either the

proposition submitted by the appellant that her former husband made and retained a secret profit of $4,000 in dealing with certain property, or that he should be held accountable for "a wanton loss" of $9,000 in the sale of a farm in Ohio.

It is contended by the appellant that the adjustment of the equities in any event should be as of the date of the conveyance of the property, in November, 1931, rather than upon the basis of the price she received for it in January, 1937, namely, $19,500. It is submitted that the prayer of the petition is for an accounting as of the former date, and that as a matter of common knowledge the value of land generally was much lower in 1931. There is one witness who valued this farm from $80 to $100 an acre at that time. On the other side, the appellee introduced six or eight witnesses whose average valuation was about $200 an acre, or $23,700. If we should accept the plaintiff's proposition, we would have to accept the better evidence and increase the judgment against her by $2,000. The Statute and Code provisions are that the judgment of divorce shall order the restoration. That obviously contemplates a prompt division of property in kind. But where that is not made and the judgment of restoration comes later, as it unquestionably may, there must be a balancing of the equities if the property has then been disposed of. Dunker v. Schuff, 134 Ky. 192, 119 S. W. 742; Hanks v. Hanks, 282 Ky. 236, 138 S. W. 2d 362. Therefore, it is not the date upon which one party received the property from the other that controls, but it is the date of the judgment. We do not appear to have hitherto construed the Code or Statute in this respect, but a like provision was so construed in Dunlap v. Dunlap, 88 Okl. 200, 212 P. 608. There is no evidence in this record tending to show the value of the property in March, 1935. It is probable that there was not much difference, or, at least, that it was not less than the sum for which the property was sold in January 1937. At any rate, the appellee is not complaining and in the absence of evidence to the contrary, we must and do accept the predicate of the judgment.

Wherefore, the judgment is affirmed.