**Alfred E. STUCKERT, Appellant,**

v.

**Charles E. KELLER, Administrator, etc., Appellee.**

Court of Appeals of Kentucky.

April 26, 1968.

William A. Miller, Louisville, for appellant.

Frank W. Burke, Louisville, for appellee.

EDWARD P. HILL, Judge.

Appellant sued appellee for an accounting and for $38,297.17; appellee counterclaimed for $7,152.40. The questions in issue were tried before a commissioner, whose report recommended an allowance of $4,488.37 to the appellee on his counterclaim. On a hearing on exceptions filed to the commissioner's report, the circuit court reduced the amount of the recovery on behalf of the appellee by $705, leaving the amount of judgment in favor of appellee at $3,783.37.

By a supplemental judgment, the circuit court reduced appellee's recovery on three items aggregating $1,332.35, which left a judgment of $2,451.02 in favor of appellee. The amount of $339.17 was directed to be held in escrow by the Greater Kentucky Building and Loan Company for the Louisville Mill Supply Company to be later applied on attorney fees for the appellant, so that the net amount of the judgment dated December 6, 1964, was $2,111.85.

Sometime during the year 1955, appellant Alfred E. Stuckert and appellee Roy C. Dillow, now deceased, entered into a verbal contract to associate themselves to do contracting work. At that time, Stuckert was in the air conditioning business, and Dillow was in the plumbing and heating business. The purpose of the association was to enable their two separate businesses to obtain larger contracts. Dillow moved into the place of business of Stuckert in the city of Louisville and spent $2,058.94 repairing their headquarters, which item has been allowed to Dillow. Although the arrangement (which we shall hereinafter dignify by designating it as a partnership) lasted less than two years and the last depositions were taken in 1959, it was not until 1966 that a final judgment was entered. Three trial commissioners participated in the hearings and in the final report.

The appellant questions the correctness of the final judgment as it relates to the three following designated jobs undertaken by the partnership: (1) LaGrange Reformatory job; (2) Shelbyville Plaza job; and (3) Kentucky Turnpike job.

We shall consider the questions as to each job separately under the name of the particular job.

We read with interest the statement in appellant's brief that: "We do not expect this court to wade through the entire record and evaluate it." However, we have found it necessary to "wade" through the entire evidence, contained in 1063 pages of depositions, only to find that some of the questions presented are still as hazy as a London fog.

The system adopted by the parties in dividing the work and collecting therefor has been the source of confusion to the special fact finding commissioner, to the trial court, and to this court.

At issue in the LaGrange job and the Shelbyville Plaza job is whether Dillow took these jobs in his own name or whether Stuckert did so. If Dillow took the contract, Stuckert billed Dillow for work, material, and additions thereto. If Stuckert took the contract, Dillow billed Stuckert.

Appellant's brief states that the commissioner made no finding as to whose job the LaGrange job was, but the report states: "The evidence shows that it was Stuckert's." In this we think the commissioner was clearly in error. The evidence overwhelmingly shows (including Dillow's evidence) that the LaGrange job was Dillow's job.

## LAGRANGE REFORMATORY JOB

This was the first contract the partnership undertook after its formation. It appears that before the formation of the partnership, each of the partners had his individual workmen specialized in his particular trade. After the partnership, each partner continued to maintain his individual work force and equipment. Apparently the partners cooperated in obtaining contracts. Once obtained, Stuckert and his men would handle the air conditioning and similar work involving tinsmithing and Dillow and his men would handle the particular part of the job that required the skill of his workmen. Apparently each of the partners kept a record of his labor and materials and attempted to collect therefor.

The LaGrange job for the most part was one requiring only the work usually performed by Stuckert. Dillow claims his efforts in getting this job were purely for the accommodation of Stuckert, although he filed claim for $602.44 for his part of the contribution.

According to the evidence, the LaGrange job was done on a cost plus basis with a maximum cost price fixed. Stuckert filed a statement with the main contractor of the LaGrange job (Platoff Construction Company) showing the amount of labor and materials supplied by him, to which he added 10 percent for overhead; 10 percent for profits; and 13 2/10 percent to cover insurance, workmen's compensation, and other similar expenses. This statement amounted to $2,751.50.

Dillow also filed a claim for labor, materials, and additions on the LaGrange job which amounted to $602.44. The commissioner recommended judgment for Stuckert in the amount of $2,149.15, and the judgment approved that part of the commissioner's report. It is apparent the commissioner deducted Dillow's claim of $602.44 from Stuckert's claim of $2,751.50. We are unable to understand the reasoning of the commissioner in arriving at this amount.

Dillow testified that at one time he collected around $800 from the Platoff Construction Company. He further testified that Stuckert presented a bill for $3,243.33 to Platoff; that Platoff was willing to honor this amount and issue a voucher therefor only on the condition that the voucher be made payable to both Stuckert and Dillow, to which Dillow said he consented. There is other evidence by Edward Platoff, the owner of Platoff Construction Company, that he paid the full amount to Dillow. If so, Dillow collected $4,043.33. Dillow concedes Stuckert is entitled to a credit of $2,149.15.

■ It is difficult to ascertain from this record whether the $800 Dillow testified he first received was included in the total statement submitted by Stuckert of $3,243.33. But, in any event, as we read the record and interpret the evidence, Dillow received this latter amount from Platoff. After subtracting Dillow's bill from the total bill submitted by Stuckert, there is a balance of $2,640.89, nearly $600 more than Stuckert was given credit

for by the commissioner and the judgment. We think the judgment allowing the credit to Stuckert of only $2,149.15 is clearly erroneous and should have been $2,751.50.

## SHELBYVILLE PLAZA JOB

The commissioner's report, approved by the judgment appealed from, found that the Shelbyville Plaza job, consisting of work on six separate buildings, was obtained by Dillow from the prime contractor, La Chase Construction Company, on a cost plus basis. This we think is correct.

By verbal understanding, Dillow assigned a part of the work to Stuckert.

Stuckert claims he is entitled to a credit from Dillow of $2,768.44 on this job.

In his written accounting filed with the trial commissioner, Dillow estimated Stuckert's work on this job at a total of $2,283.96, from which he deducted $271.58 for supplies or labor furnished by Dillow. The trial commissioner and the judgment accepted Dillow's figures (except for one cent) and allowed Stuckert $2,012.38. On this appeal Stuckert claims $756.05, the difference between the $2,768.44 claim presented by him and the amount allowed of $2,012.39. Dillow's report of Stuckert's bills on the six Shelbyville units was $2,283.96, or $484.50 less than Stuckert's estimate. (The parties' figures only agreed on Stuckert's charges on two of the six units.)

■ We are more impressed with the itemized statement and testimony of Stuckert than with Dillow's evidence, but the evidence is confusing on these items and we cannot say that Stuckert's evidence was so overwhelming and convincing as to require the acceptance of his figures by the trial court. Hence, we cannot say the findings of the trial court on the Shelbyville job were clearly erroneous.

## KENTUCKY TURNPIKE JOB

Unlike the LaGrange and Shelbyville Plaza jobs, it is agreed Dillow contracted with Shimpler Construction Company to do certain plumbing, heating, ventilating, and air conditioning on two public projects on the Kentucky Turnpike, one at Lebanon Junction and the other at Shepherdsville.

Dillow, by written contract for a change, subcontracted a portion of this work to Stuckert for $48,293.

We would have little difficulty with the Turnpike job but for the obvious miserable failure of Stuckert to perform his contract, necessitating its completion by Dillow. To further complicate this job, Stuckert did extra work amounting to more than $9,300, for which he was given credit in the judgment. Appellant admits in his brief that "the written contract did not really embrace the full agreement upon Stuckert's part with Dillow to perform certain parts of the contract bid by Dillow." Part of Stuckert's work was disapproved by the state engineer and serious complaint was made of Stuckert's progress. Dillow was required to replace some of Stuckert's work and complete the job. Added to the difficulty of settling the affairs of the "partnership" was the obvious disinterest and disregard of Stuckert in the completion of his contract. His own testimony reeks of abandonment and disinterest in the job.

Further complications grew out of numerous verbal agreements between Stuckert and Dillow and between Stuckert and Roth.

Stuckert first obtained the services of Alfred Roth & Sons to complete a part of his contract. Roth quit the job after partial completion. Thereupon Dillow was required to take over. He engaged Hignight Electric Company to finish the job. Stuckert showed little, if any, interest in the work after engaging Roth, so that

his knowledge was limited as to what occurred thereafter. His testimony was of little assistance to the trial commissioner, to the trial court, or to this court. As a result, practically all the evidence of the affairs of the parties was entirely within the possession of Dillow. Although Stuckert denied many of the items charged to him by Dillow, the trial commissioner and the circuit court leaned heavily on Dillow's evidence.

It has long been a rule of this and other appellate courts that in "order to secure a reversal of a judgment, it is incumbent upon the appellant to show error and to overcome the presumption that the trial court's decision was correct." Cf. Sloan v. Jewel Ridge Coal Corporation,

Ky., 347 S.W.2d 504, and Potts v. Potts, 299 Ky. 216, 184 S.W.2d 987.

We conclude the appellant has failed to show error in the judgment appealed from in so far as the Turnpike job is concerned.

Other items are questioned, but there is credible evidence to support the judgment as to each. Certainly we cannot say the judgment is clearly erroneous as to such other items.

The judgment is reversed with directions to reduce the total amount adjudged to Dillow by $602.44.

All concur.