[No. B009903. Second Dist., Div. Three. Dec. 31, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
KINGS POINT CORPORATION, Defendant and Appellant.

**COUNSEL**

John Patrick Kelly and John E. Crooks for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Arthur C. de Goede, Assistant Attorney General, Jack T. King and Joseph M. O'Heron, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KENNARD, J.*—Defendant Kings Point Corporation appeals from a judgment in favor of plaintiff, the People of the State of California. Because defendant has no standing to appeal, the appeal is dismissed.

FACTUAL AND PROCEDURAL BACKGROUND

In 1977, defendants offered and subleased 1,401 coal-mining properties in conjunction with a contract for the sale of coal.[1] Defendants conducted these activities from headquarters in Los Angeles, California. The investor could invest with either defendant Cambridge Corporation (hereafter Cambridge) or with Wyoming and Western Coal Reserves, Inc. (hereafter Wyoming and Western).

Under the Cambridge program, Cambridge would sublease to the investor a coal-mining property warranted to have certain net tonnage of economically recoverable coal, for which the investor had to pay Cambridge a minimum annual royalty. The royalty was a multiple of the investor's initial cash payment, with the multiple being 3.25 times the amount of the cash investment. It was represented to the investor that the royalty payment was tax deductible. The investor would also enter into a sales contract with defendant Poly-Tex International (hereafter Poly-Tex). Under this contract, Poly-Tex agreed to buy 32.5 percent of the coal "in place" (still in the ground) at the premises subleased from Cambridge. The terms of the contract created a "carved out production payment," requiring Poly-Tex to pay the investor/lessee an initial payment towards the price at which Poly-Tex would buy the coal, with the balance to be paid from coal sold or mined, removed and marketed. Payment to the investor was made by check, which, together with the cash sum invested by the investor for the coal-mining lease, constituted the advance minimum royalty payment due under the lease agreement. After the investor's endorsement of the check in favor of Cambridge, defendants would negotiate the check under an "Authorization to Negotiate" signed by the investor.

---

*Assigned by the Chairperson of the Judicial Council.

[1]The same promoters involved in the 1977 offering were also involved in 1976 in the offer and sale of limited partnership interests in coal leases. That offering resulted in a lawsuit by the state against defendants in superior court case No. C 193 603, People v. Cal-Am Corporation et al., in which the state sought rescission, restitution, and civil penalties. Judgment was in favor of the People. Defendants' appeals in that case (2d Civ. No. B005153) were dismissed on August 13, 1985.

Because of a change in the tax law, the promoters based the 1977 offering on the sale of subleases in coal properties, as opposed to the limited partnership interests in coal properties involved in the 1976 offering.

Under the Wyoming and Western programs, the investor would enter into (1) a coal-mining sublease with Wyoming and Western and (2) a sales agreement with Coal and Minerals Leasing and Development Corporation (hereafter Coal and Minerals), whereby the latter would buy from the investor 20 to 30 percent of the coal in place in the premises leased from Wyoming and Western. Like the Cambridge plan, the investor would be paid by check, which he would endorse in favor of Wyoming and Western, after which the check would be negotiated by defendants. Under the Wyoming and Western programs, the investor had to execute a nonrecourse note.

The cash received from the investors and the money created solely through bookkeeping entries were circulated among the corporate defendants through bookkeeping advances from one corporate defendant to another. The bulk of the cash received from the investors was ultimately disbursed to defendant Kings Point Corporation. The money created through bookkeeping entries was unsecured by cash or collateral, thus existing only as bookkeeping entries.

On December 21, 1977, the state filed an action against defendants in the superior court for an injunction, receivership, restitution, and civil penalties. The same day, the court issued a temporary restraining order enjoining further sales under the Cambridge and Wyoming and Western programs.

In an amended complaint filed in May 1978, the state named the corporate and individual defendants previously sued as Does 1 through 8. Among the defendants named was Kings Point Corporation. The state alleged that Kings Point Corporation "and others" had offered and sold nonexempt securities in violation of the state Corporate Securities Law. The complaint also alleged that the offering or sale was based on misrepresentations or material omissions in that defendants possessed no interest in the properties subleased to investors in the months of June through September 1977, when defendants collected over $3.9 million from investors. Also, most of the subleased properties contained no economically recoverable coal, as had been warranted. The complaint further alleged that defendants had engaged in unfair competition.

In June 1978, Kings Point Corporation, severing itself from its codefendants, filed an answer. In December 1982, before trial, defendant Kings Point Corporation filed for bankruptcy in the federal court under chapter XI of the Bankruptcy Code. The bankruptcy court appointed a trustee. Based on a motion filed by the state, the bankruptcy court ordered the proceedings brought by the state against Cambridge Corporation et al. exempted from the automatic stay provisions of 11 United States Code

section 362(a) and ruled that the action not be enjoined from proceeding under 11 United States Code section 105(a).

The parties, including defendant Kings Point Corporation, agreed to bifurcate the superior court trial proceedings, with the securities issues being tried first and the civil penalty issues tried thereafter. Trial on the securities issues commenced on September 12, 1983. In its interlocutory judgment, the superior court found that defendants had engaged in the sale of securities without a permit, in violation of the state Corporate Securities Law. The defendants held liable were Joseph Laird, Jr., Cambridge Corporation, Poly-Tex, Wyoming and Western, Coal and Minerals leasing, Turinco, Kings Point Corporation, and Legal Mortgage Corporation. The court found the remaining defendants to be neither issuers nor aiders and abettors.

In January 1984, the state and the bankruptcy trustee, acting on behalf of Kings Point Corporation, stipulated to certain facts on the issue of civil penalties for fraud, misrepresentation and material omission in the sale of nonexempt unqualified securities. On February 24, 1984, the bankruptcy court approved the trustee's application to compromise the controversy. That same date, based on the stipulation of facts entered into earlier, the state and defendants, including the bankruptcy trustee for Kings Point Corporation, stipulated to a judgment for civil penalties in the sum of $500,000. Thereafter, the superior court entered judgment and a permanent injunction against Kings Point Corporation, among others.

Kings Point Corporation appeals, claiming the sale of the coal subleases was not a sale or offer of securities and therefore not subject to the state Corporate Securities Law. Respondent state contends Kings Point Corporation has no standing to appeal, and therefore the appeal should be dismissed. At oral argument, we asked both parties to submit supplemental briefs on the issue of standing, and they have done so.

DISCUSSION

 The threshold issue is whether Kings Point Corporation has standing to bring this appeal. We conclude it does not.

Upon the filing of a petition for bankruptcy all of the debtor's assets, including any interest in a cause of action, pass to the trustee in bankruptcy. (11 U.S.C. § 541(a)(1); *Stein* v. *United Artists Corp.* (9th Cir. 1982) 691 F.2d 885, 890, 892; *Tarr* v. *Merco Constr. Engineers, Inc.* (1978) 84 Cal.App.3d 707, 713 [148 Cal.Rptr. 813]; *Wood* v. *Lowe* (1974) 39 Cal.App.3d 296, 299 [114 Cal.Rptr. 69].) An appeal is a *continuation* of a cause of action. The action "is deemed to be pending from the time of its commencement until

its final determination upon appeal, or until the time for appeal has passed, . . ." (Code Civ. Proc., § 1049; 9 Witkin Cal. Proc. (3d ed. 1985) Appeal, § 1, p. 33.)

After his appointment by the bankruptcy court, the trustee in this case assumed all authority in the litigation underlying this appeal, representing Kings Point Corporation at all stages of the superior court proceedings. Since the interests of Kings Point Corporation in this matter, including the right to appeal, passed to the trustee in bankruptcy by operation of law, it follows that the trustee, not the bankrupt corporation, was the proper party to bring the appeal.

■ Also, absent an "abandonment," only the trustee in bankruptcy can represent a debtor's interests in any litigation by or against the debtor. (See *Wood* v. *Lowe, supra,* 39 Cal.App.3d 296, 299.) Nothing before us indicates that when Kings Point Corporation decided to pursue an appeal on its own behalf the trustee had abandoned its right to file an appeal from the superior court judgment in this case. To prove abandonment, the debtor must establish "at least the trustee's intention" to do so. (*Stein* v. *United Artists Corp., supra,* 691 F.2d 885, 891.) Also, leave of the bankruptcy court is required before there can be any abandonment by the trustee. (*Ibid.)* Neither of these two requirements was met here.

■ Once it became clear to the bankrupt Kings Point Corporation that the trustee would not bring an appeal from the judgment in the superior court, and the bankrupt corporation felt an appeal should be filed, its remedy was to petition the bankruptcy court to compel the trustee to file an appeal, or to authorize the bankrupt to file an appeal on its own behalf. Absent such authorization, Kings Point Corporation has no standing to bring this appeal. (See *Dallas Cabana, Inc.* v. *Hyatt Corporation* (5th Cir. 1971) 441 F.2d 865, 868.)

Kings Point Corporation's reliance on *Potts* v. *Potts* (1945) 299 Ky. 216 [184 S.W.2d 987] is misplaced. *Potts* held that when the time for taking an appeal has nearly elapsed, it is assumed the trustee "was not interested and waived his primary right" to appeal, thus affording the bankrupt the right to pursue the appeal. (*Id.,* at p. 220.) *Potts* was decided in 1945 and was based on an interpretation of the old Bankruptcy Act. Effective October 1, 1979, the law underwent substantial changes, clarifying, among other things, the issue of abandonment by the trustee in bankruptcy. As recently noted in *Stein* v. *United Artists Corp., supra,* 691 F.2d 885, 891 "the emerging rule . . . is that leave of the bankruptcy court is required" before any abandonment by the trustee in bankruptcy.

Kings Point Corporation contends the trustee "could not maintain an appeal" because having "conspired" with the state's attorneys to harm the interests of Kings Point Corporation it obviously did not want to pursue an appeal on behalf of Kings Point Corporation. If Kings Point Corporation was dissatisfied with the trustee's representation, it should have complained about it to the bankruptcy court, which had jurisdiction over the bankrupt corporation's assets.

### DISPOSITION

The state's motion to dismiss the appeal is granted based on the lack of standing by Kings Point Corporation to bring the appeal.

Klein, P. J., and Danielson, J., concurred.