[No. A066333. First Dist., Div. Three. July 19, 1995.]

ALDIS BALTINS et al., Plaintiffs and Appellants, v.
DUNCAN M. JAMES, Defendant and Respondent.

## COUNSEL

Achor, Miller, Culver & Mailliard, William S. Mailliard, Jr., and Christopher R. Miller for Plaintiffs and Appellants.

Robert A. Murray, Boyd, Murray & Wick and Michael G. Dini for Defendant and Respondent.

## OPINION

CHIN, P. J.—This appeal raises the issue of when "actual injury" occurs for purposes of the four-year limitations period for legal malpractice actions.

(Code Civ. Proc., § 340.6, subd. (a)(1).)[1] Appellants Aldis and Nancy Baltins sued their former attorney, respondent Duncan M. James, in August 1990. They asserted James negligently advised them in 1984 about transferring property while Aldis appealed an order setting aside his property settlement with his former wife, Deanna.[2] That appeal was the subject of *In re Marriage of Baltins* (1989) 212 Cal.App.3d 66 [260 Cal.Rptr. 403], which affirmed the order. The Baltinses claim their first actual injury from James's advice occurred nine years after the alleged malpractice, when the trial court finally divided Aldis and Deanna's community property. James demurred to the Baltinses' amended complaint, arguing that any actual injury must have occurred before the attorney-client relationship terminated in 1985. The trial court agreed and sustained the demurrer.

In this court, James offers two events as injuries that support the trial court's judgment: the 1984 order setting aside the original division of community property, and Aldis's 1984 transfer of his former residence with Deanna to his new wife, Nancy. However, under the governing standard of review, neither event satisfies the bright line test for actual injury our Supreme Court developed in three recent cases: *Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691] (*Laird*); *ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965] (*Niles*); and *International Engine Parts, Inc.* v. *Feddersen & Co.* (1995) 9 Cal.4th 606 [38 Cal.Rptr.2d 150, 888 P.2d 1279] (*Feddersen*). If the existence or effect of a professional's error depends on a litigated or negotiated determination's outcome, these decisions find actual injury occurs only when that determination is made. The Baltinses' pleading fits squarely within this test for actual injury. Accordingly, we must reverse the judgment and remand the case for further proceedings.

### THE STANDARD OF REVIEW

■ When reviewing the sufficiency of a complaint against a demurrer, we must accept as true the complaint's well-pleaded material facts, but not contentions, deductions, or conclusions of law. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We may consider judicially noticeable matters (*ibid.*), but a demurrer generally does not test the truth of the plaintiffs' allegations, or the accuracy with which they

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]For the sake of clarity and convenience, we will refer to Aldis, Nancy, and Deanna by their first names. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].) Because this appeal deals with Aldis's and Nancy's claims against James, and only peripherally involves Deanna, we will refer to Aldis and Nancy Baltins collectively as the Baltinses.

describe the defendant's conduct (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213 [197 Cal.Rptr. 783, 673 P.2d 660]).

■ If an action appears time barred on the face of the complaint, the plaintiffs must anticipate the defense and plead facts to negate the bar. (*Union Carbide Corp.* v. *Superior Court* (1984) 36 Cal.3d 15, 25 [201 Cal.Rptr. 580, 679 P.2d 14].) ■ Even so, on an appeal following an order sustaining a demurrer, ". . . an appellate court is required to construe the complaint liberally to determine whether, assuming the facts pleaded to be true, a cause of action has been stated. [Citation.]" (*Posey* v. *State of California* (1986) 180 Cal.App.3d 836, 842 [225 Cal.Rptr. 830]; see § 452.) In accord with these requirements, we draw our statement of facts primarily from the Baltinses' amended complaint and those matters subject to judicial notice.[3]

## FACTS

Aldis and Deanna separated in January 1982 and afterwards signed a marital settlement agreement, handwritten by Aldis, that covered child custody, support, and the division of their community property. Aldis, acting in propria persona, filed a petition for dissolution of the marriage in March 1983; an uncontested interlocutory judgment of dissolution was entered in April, with the final judgment following in October. The interlocutory judgment incorporated a typed and executed property settlement agreement that was substantially the same as the earlier handwritten agreement. In April 1984, Deanna filed a motion to set aside those portions of the interlocutory and final judgments that divided the community property and set the amount of spousal and child support.

Beginning in February 1983, Aldis consulted James for legal advice on the marital dissolution action and related property transfers. After dissolution of his marriage to Deanna, Aldis married Nancy. In April 1984, Aldis and Nancy retained James to oppose Deanna's motion to set aside the property division and support judgments in the dissolution action. James agreed to represent the Baltinses with respect to Deanna's motion and other matters.

The trial court heard Deanna's motion over a two-day period in June and, by order filed August 16, 1984, set aside the community property division.

---

[3]Among the matters we judicially notice are certain trial court orders and the 1993 statement of decision and final judgment in the dissolution action, appeal from which is now pending before this court. (*In re Marriage of Baltins*, No. A063078, app. pending.) We also take judicial notice of our prior opinion in that case. (*In re Marriage of Baltins*, *supra*, 212 Cal.App.3d 66.)

On James's advice, Aldis appealed the order on August 31, 1984, and five days later amended the notice of appeal to include the trial court's subsequent order granting Deanna's separate motion to increase child and spousal support.[4]

James met with the Baltinses on September 12, 1984. He advised them that the appeal's pendency allowed them to dispose of and manage property as though the August 16, 1984, order did not exist. Relying on this advice, Aldis gave Nancy a quitclaim deed transferring his residence on Robinson Creek Road to her as her sole and separate property. The Robinson Creek Road property was a 30-acre ranch with a remodeled ranch house, a garage, barns, a swimming pool, and a vineyard. The ranch had been a substantial part of Aldis and Deanna's community assets.

Because James said the appeal stayed the trial court's order for increased support payments to Deanna, Aldis continued to make support payments under the prior agreement. Aldis also continued to pay the mortgages on investment properties he received under the former property settlement agreement. James said Aldis would get the title to those properties or would receive reimbursement credits for his expenditures pursuant to *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 80 [154 Cal.Rptr. 413, 592 P.2d 1165]. The Baltinses alleged that those expenditures totaled $508,614.31.

The Baltinses terminated their attorney-client relationship with James in November 1985.[5] On July 18, 1989, we affirmed the trial court's orders setting aside the property and support provisions of the interlocutory and final judgments and modifying Aldis's support obligations. (*In re Marriage of Baltins*, *supra*, 212 Cal.App.3d at p. 95.) In so doing, we found sufficient evidence to support the express finding that fraud, mistake, and duress deprived Deanna of a fair adversary hearing, and the implied findings that her delay in seeking relief was reasonable, and that the circumstances of the case overcame the strong policy favoring finality of judgments. (*Id.* at p. 93.) We also indicated that Aldis's right to reimbursement credits was uncertain

---

[4]In their original complaint, the Baltinses alleged that James negligently prepared for and conducted himself at the hearings on Deanna's motions, with the result that the trial court granted both motions. They also alleged James negligently defended Aldis in a collateral suit.

[5]The amended complaint also alleged that James remained an attorney of record in the matters on appeal until issuance of the remittitur. However, on December 4, 1985, Aldis signed substitution of attorney notices for the trial court and for this court, which were filed on December 4 and 10, respectively. Further, the Baltinses' original complaint, which was verified, stated that James's representation of their interests ended "on or about December 4, 1985." In any event, simply remaining as a counsel of record does not constitute continued representation that tolls the limitations period of section 340.6. (*Shapero* v. *Fliegel* (1987) 191 Cal.App.3d 842, 848-849 [236 Cal.Rptr. 696]; see *Hensley* v. *Caietti* (1993) 13 Cal.App.4th 1165, 1172-1173 [16 Cal.Rptr.2d 837].)

and that he might be assessed charges to reimburse the community for his use of community assets under *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374 [217 Cal.Rptr. 301]. (*In re Marriage of Baltins, supra,* 212 Cal.App.3d at p. 86.) We also rejected Aldis's argument that his first notice of appeal divested the trial court of jurisdiction to make the support order.[6] (*Id.* at pp. 94-95.) The remittitur issued on September 26, 1989.

The Baltinses' original, verified complaint alleged that they discovered James's negligent conduct after the case was remanded and they retained new counsel. In their amended complaint, they allege that they did not know, and could not have known, of James's negligence *and* the resulting damages until much later.

In December 1989, Deanna filed a petition to add Nancy as a party in the dissolution action for the determination of property rights. The Baltinses' amended complaint alleges: "This joinder was a direct result of the transfer of title to the Robinson Creek property undertaken at the advice and direction of . . . James. As a result of that action, substantial attorneys' fees have been incurred by [the Baltinses]."

The Baltinses filed suit against James on August 16, 1990. By order filed November 8, 1991, the trial court abated the case against James until completion of the dissolution action. The trial court rendered a tentative decision in the dissolution action on October 3, 1992, and filed a statement of decision on May 18, 1993. It entered judgment in the dissolution action on July 14, 1993.[7] James was served with the summons and complaint on

---

[6]Following the remand, in November 1989 the trial court ordered Aldis to pay $23,477 to Deanna for child support arrearages, including interest. However, it denied Deanna's parallel request for spousal support arrearages.

[7]Under the July 1993 judgment in the dissolution action, Aldis received the Robinson Creek Road property, which the court found was worth $525,000 and had a net fair market value of $234,918.40. However, the court ruled that Aldis would receive only $203,000—40 percent of the amount he claimed—for reimbursement credits for that property. The court also charged Aldis $200,000 for the property's fair rental value since the separation because he had exclusive use of the property.

The court denied Aldis reimbursement for Aldis and Deanna's Lake Tahoe investment properties except to the extent that they had equity at the time of separation that later was lost. The court awarded no reimbursement for those properties because the reimbursement would have exceeded the equity at the time of separation. The court equally divided the $5,000 equity left from the properties' dispositions. The court also denied Aldis the $108,615 reimbursement he sought for his and Deanna's half-interest, worth $10,000, in a corporation that owned an airplane. The trial court found that Aldis's lengthy holding of the nonincome-producing asset was a breach of fiduciary duty.

June 23, 1993.[8] On September 24, 1993, James filed a demurrer to the original complaint, asserting that the statute of limitations barred the action.[9] The trial court granted the demurrer with leave to amend. The Baltinses filed their amended complaint on December 22, 1993.

The amended complaint alleged that Aldis followed James's advice and was found to have violated fiduciary duties in managing community assets. As a result, the court denied Aldis a substantial portion of the reimbursement credits he claimed. The Baltinses asserted that until the dissolution action ruling, they did not discover, and could not have discovered, James's negligence and the resulting damage.

The amended complaint alleged that James failed to ascertain the law concerning an appeal's effect on existing orders and property transfers. The Baltinses asserted that James misrepresented the law on property use, transfers of ownership, and fiduciary duties during the pendency of the appeal. They also asserted that he failed to advise them of the tax consequences of using and transferring property and "of tax consequences of potential adverse rulings at the trial of the property issue on remand from the Court of Appeal . . . ."

The Baltinses alleged that if James had exercised proper care and skill, Aldis would not have paid community debts in reliance on being reimbursed and would not have given Nancy the quitclaim deed to the Robinson Creek Road property. They also asserted that Nancy would not have expended her separate property funds on that property. The amended complaint further alleged they would not have gone through the expense and trouble resulting from Deanna's effort to set aside the transfer of that property, and they would not have incurred charges and penalties for abortive attempts to obtain loans secured by the property. The Baltinses claim that James's negligence caused them to lose reimbursement credits and incur extra attorney fees and costs.

James again demurred on the ground that the Baltinses' claims were time barred by section 340.6. The trial court sustained the demurrer without leave

---

[8]The record indicates that James learned earlier that the Baltinses had filed a case against him. James stated in a declaration that on November 1, 1991, he was in court on another matter when the court held the ex parte hearing that led to the abatement order in the malpractice action. James appeared specially at the hearing.

[9]James also moved unsuccessfully for dismissal of the action for delayed prosecution based on the delay in bringing the case to trial and in serving the complaint. (See §§ 583.410, 583.420, subd. (a)(1) & (2)(A).) The trial court's denial of the motion is not at issue on this appeal.

to amend. The judgment dismissing the amended complaint was filed on April 6, 1994; this timely appeal followed.[10]

## DISCUSSION

The statute of limitations for legal malpractice states, as pertinent to this case: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or *four years from the date of the wrongful act or omission, whichever occurs first. . . ."* (§ 340.6, subd. (a), italics added.)

The Baltinses alleged that James's negligent acts and omissions occurred in September 1984. Thus, absent tolling, the statute of limitations on their claims would have run four years later in September 1988.[11] Only one tolling provision in section 340.6 potentially applies to the claims alleged in the amended complaint: "In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained *actual injury* . . . ." (§ 340.6, subd. (a), italics added.)

The Baltinses argue that their amended complaint shows two possible dates they sustained actual injury, and that under either date their suit was timely. They suggest the earliest that actual injury could have occurred was in December 1989, when Deanna added Nancy as a party to the dissolution

---

[10]James has suggested that Aldis may not have standing to pursue this appeal because he filed a petition in bankruptcy before appealing. (See *People* v. *Kings Point Corp.* (1986) 188 Cal.App.3d 544, 548-549 [233 Cal.Rptr. 227].) However, notwithstanding the transfer of a bankrupt's cause of action to the bankruptcy estate by operation of law, the bankrupt may continue to prosecute the action pending assertive conduct by the trustee in bankruptcy. (*California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730 [284 Cal.Rptr. 687]; *ABA Recovery Services, Inc.* v. *Konold* (1988) 198 Cal.App.3d 720, 726 [244 Cal.Rptr. 27].) This case was duly listed in Aldis's bankruptcy schedules, but there is no indication that the trustee or the bankruptcy court took any assertive action over this suit. (Cf. *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66, 78-79 [240 Cal.Rptr. 423], disapproved on another point in *Laird, supra,* 2 Cal.4th at pp. 616-617.) Therefore, Aldis has standing to pursue this appeal. (*California Aviation, Inc.* v. *Leeds, supra,* 233 Cal.App.3d at p. 730.)

[11]James's demurrers in the trial court, and the parties' arguments on appeal, focus on the four-year limitations period. Under the standards governing demurrers, the amended complaint is susceptible only to a challenge based on the four-year provision. The Baltinses' complaints, liberally construed and accepted as true, do not show discovery of James's alleged negligence more than a year before they sued him, even though there is some inconsistency in the relevant allegations. We therefore express no opinion on whether the one-year limitations period might apply under a different factual showing.

action. But they primarily contend that actual injury occurred only when the July 1993 judgment in the dissolution action found Aldis breached fiduciary duties owed to Deanna and denied him reimbursement credits.

James argues the Baltinses sustained actual injury in August 1984 when the trial court set aside the property division under the dissolution judgments. James contends the amended complaint's damages allegations relate only to the extent of damage caused by that order, because without the order none of the subsequent claims and expenses would have occurred. Drawing on the original complaint's claims that his negligence caused the August 1984 order, James relies on *Laird, supra,* 2 Cal.4th 606, for the proposition that a plaintiff sustains actual injury, at the latest, upon entry of an adverse order or judgment. Alternatively, James argues that the Baltinses sustained actual injury when Aldis gave Nancy the quitclaim deed for the Robinson Creek Road property. He contends the attempted transfer of title constituted a loss of a right or remedy because it exposed Nancy to potential litigation and altered the legal relationships between the parties. However, James's arguments misconceive section 340.6 and the cases interpreting it.

### Section 340.6 and "Actual Injury"

The Legislature's enactment of section 340.6 in 1977 codified the rules of *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] (*Neel*), and *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 198 [98 Cal.Rptr. 849, 491 P.2d 433] (*Budd*). (*Laird, supra,* 2 Cal.4th at p. 611.) In *Neel,* the court held that a cause of action for legal malpractice accrues when the client discovers, or should discover, the material facts essential to establish the cause of action. (*Neel, supra,* 6 Cal.3d at pp. 190, 194.) In *Budd,* the court held that a cause of action for legal malpractice does not accrue until the client suffers damage. (*Budd, supra,* 6 Cal.3d at p. 198.)

Writing for the unanimous court in *Budd,* Justice Tobriner clearly explained the factual issue involved in the nexus between negligent conduct and harm: "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of [the] attorney's negligence, the client cannot establish a cause of action for malpractice. . . . [¶] The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by [the] attorney's negligence. [Citations.] *Any appreciable and actual harm flowing from the attorney's negligent conduct* establishes a cause of action upon which the client may sue. [¶] Indeed, once

having discovered [the] attorney's negligence and having suffered some damage, the client must institute [an] action within the time prescribed . . . ." (*Budd, supra*, 6 Cal.3d at pp. 200-201, fn. omitted, italics added.)

The legacy of *Budd* is apparent in the Legislature's decision to toll the four-year limitations period during the time that the client "has not sustained *actual injury*." (§ 340.6, subd. (a)(1), italics added.) The Legislature used the term "actual" to focus inquiry on the fact of damage and omitted qualifiers to forestall confusion over the extent of damage needed to trigger the limitations period. (*Laird, supra*, 2 Cal.4th at p. 613.) Thus, actual injury need not be defined by a monetary amount, and the limitations period is not tolled if the injury is, in some sense, remediable. (*Id.* at pp. 611, 614-617.) The Supreme Court in *Laird* therefore held that when negligently conducted litigation underlies a malpractice claim, actual injury occurs when the client suffers an adverse judgment or order of dismissal, not upon conclusion of a subsequent appeal. (*Id.* at p. 615.)

In *Niles, supra*, 9 Cal.4th 245, the Supreme Court considered "actual injury" in the context of negligent preparation of loan documents for a lender. The attorney argued that the lender sustained actual injury by incurring attorney fees in the debtor's action contesting the loan documents' adequacy. (*Id.* at pp. 248-249, 251.) The lender asserted actual injury occurred only when it settled with the debtor for less than the full value of its security. (*Id.* at pp. 249, 251.)

The Supreme Court concluded that ". . . in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of an adverse judgment, settlement, or dismissal of the underlying action." (*Niles, supra*, 9 Cal.4th at p. 258.) The court stressed that there must be a nexus between the alleged malpractice and the injury (*id.* at pp. 250, 252-253, 258), a critical point for analyzing statute of limitations problems since *Budd* (*Budd, supra*, 6 Cal.3d at pp. 200-201). Thus, if the propriety of an attorney's acts or advice is contingent on the outcome of a claim by or against the client, the client does not sustain actual injury until the claim is resolved adversely, which indicates both that the attorney erred and that the error caused harm. (*Niles, supra*, 9 Cal.4th at pp. 252-253, 258; *Laird, supra*, 2 Cal.4th at pp. 614-615; *Pleasant v. Celli* (1993) 18 Cal.App.4th 841, 850 [22 Cal.Rptr.2d 663]; see *Sirott v. Latts* (1992) 6 Cal.App.4th 923, 929-930 [8 Cal.Rptr.2d 206].)

In *Feddersen*, the Supreme Court applied the reasoning of *Laird* and *Niles* to the statute of limitations used for accounting malpractice claims, section 339, subdivision 1. (*Feddersen, supra*, 9 Cal.4th at pp. 619-620.) That

statute, which governed legal malpractice actions before enactment of section 340.6, has been interpreted by the courts—including *Budd*—as requiring actual injury for commencement of the limitations period. (*Feddersen*, *supra*, 9 Cal.4th at pp. 613-614.) In *Feddersen*, the accountant negligently omitted from the client's 1983 and 1984 tax returns documents that were necessary for the client's favorable tax status. (*Feddersen*, *supra*, 9 Cal.4th at p. 609.) The returns were audited. The client learned in 1986 that it would lose its favorable tax status and that its tax liability could approximate $300,000. (*Ibid.*) As a result, the client's line of credit was reduced by $200,000, and the client had to withdraw a settlement offer in unrelated litigation. (*Id.* at p. 610.) The client also paid attorney fees for representation during the audit process. (*Ibid.*) The audit became final as to the Internal Revenue Service when it assessed the deficiency and imposed penalties and interest on May 16, 1988. (*Ibid.*) The dispositive issue before the Supreme Court was whether the client sustained actual injury before assessment of the tax deficiency. (*Id.* at p. 611.)

In holding that actual injury coincided with the tax deficiency assessment, the Supreme Court equated the assessment to the unfavorable settlement in *Niles*. (*Feddersen*, *supra*, 9 Cal.4th at p. 619.) Relying on the reasoning of *Laird* and *Niles*, the court observed that whether the client suffered actual injury from a negligently prepared tax return was contingent on the outcome of the audit. (*Feddersen*, *supra*, 9 Cal.4th at pp. 619-620.) Once the deficiency assessment completed the audit process adversely to the client, the harm from the alleged negligence was no longer contingent; the cause of action had accrued. (*Id.* at p. 620.) In reaching this conclusion, the court noted that "actual injury" is a legal term of art that views neither inchoate nor potential injury as giving rise to a professional malpractice action unless a determination relates the alleged negligence to noncontingent harm. (*Ibid.*)

The court conceded that the client may have suffered palpable harm from the accountant's error when the client's credit line was reduced and when the client had to withdraw the settlement offer. (*Feddersen*, *supra*, 9 Cal.4th at p. 620.) However, those consequences flowed only from a tentative assessment of a potential liability. (*Ibid.*) The court recognized that in some cases, injury will be clear, and negative collateral consequences might arise before a determination confirms the professional's error. (*Feddersen*, *supra*, 9 Cal.4th at pp. 621-622.) The court said, though, that a bright line rule provides certainty in the statute's application, and that "uniformity in application serves a more important function when interpreting statutes of limitation

than does the identification of the precise point at which some harm might be said to have occurred . . . ." (*Ibid.*)[12]

With these basic principles in mind, we turn to consideration of the parties' contentions on this appeal.

### "Actual Injury" and the Amended Complaint

James argues that the damages alleged in the amended complaint all flow from the August 1984 order setting aside the initial judgments in the dissolution action. He asserts that the amended complaint's damages claims derive from the August 1984 order because without that order, there would not have been further proceedings in the dissolution action. Because the Baltinses' original complaint alleged that James's negligence caused the entry of that order, James asserts that under *Laird*, they sustained actual injury at that point. The argument is flawed in two respects.

First, an amended complaint supersedes the original, which loses all function as a pleading. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362].) Ordinarily, appellate courts will not consider the allegations of a superseded complaint. (*Committee on Children's Television, Inc.* v. *General Foods Corp.*, *supra*, 35 Cal.3d at p. 209; *Foreman & Clark Corp.* v. *Fallon*, *supra*, 3 Cal.3d at p. 884.) Excepted from this rule are amended complaints that try to avoid a predecessor's defects by pleading inconsistent facts or by omitting the facts that rendered the prior complaint defective. (See *Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379, 383-384 [243 Cal.Rptr. 627].) When that happens, the policy against sham pleading allows the court to require an explanation for the inconsistency. (*Ibid.*) Absent an explanation, the court may disregard the inconsistent new allegations and read the superseded allegations into the amended complaint. (*Ibid.*)

Here, though, the Baltinses have not omitted facts without explanation or pleaded inconsistent facts to avoid the statute of limitations. Instead, they have dropped their time-barred claims for negligence related to the 1984 orders setting aside the initial property division and increasing Aldis's

---

[12]In support of its approach, the court also echoed a point raised in *Niles*, that requiring the client to litigate simultaneously the underlying matter and the professional malpractice claim could waste judicial resources. (*Feddersen*, *supra*, 9 Cal.4th at p. 620; *Niles*, *supra*, 9 Cal.4th at p. 257.) If the client prevails in the underlying matter, the malpractice action may become unnecessary. (*Niles*, *supra*, 9 Cal.4th at p. 257.) *Feddersen* also observed that delaying accrual allows the professional to correct an error or mitigate its consequences in the underlying matter without the client's factual allegations in the negligence action being used against the client. (*Feddersen*, *supra*, 9 Cal.4th at p. 620.)

support obligations, and to defense of the collateral lawsuit. They reasserted only the claims that James negligently advised them about the prior appeal's effect, and that the negligent advice caused Nancy's embroilment in the property division dispute and the finding that Aldis violated fiduciary duties. The allegations in the amended complaint are consistent with those in the original complaint. Where the original complaint essentially alleged three instances of negligent conduct, and three types of resulting damage, the amended complaint alleges only the negligent advice and the damages related to that advice. Consequently, we do not concern ourselves with the superseded negligence claims.

The other flaw in viewing the August 1984 order as actual injury is the chronological relationship between that order and any subsequent negligent advice concerning the appeal from the order. As the Supreme Court underscored in *Budd, Laird, Niles,* and *Feddersen,* actual injury must relate to the alleged negligence. (*Feddersen, supra,* 9 Cal.4th at pp. 619-620; *Niles, supra,* 9 Cal.4th at pp. 250, 252-253; *Laird, supra,* 2 Cal.4th at p. 614; *Budd, supra,* 6 Cal.3d at pp. 200-201.) The amended complaint alleges only that James negligently advised the Baltinses in September 1984 concerning their rights and responsibilities during the appeal from the order setting aside the initial division of community property. Obviously, they could not sustain actual injury as a consequence of such advice before James gave them the advice.

James fares no better with his alternative argument that the Baltinses sustained actual injury when Aldis gave Nancy the quitclaim deed to the Robinson Creek Road property in September 1984. James argues that the deed altered the legal relations of the parties and created an obligation that exposed Nancy to potential litigation by Deanna. He asserts the attempted property transfer therefore marks the point of actual injury under *Hensley* v. *Caietti, supra,* 13 Cal.App.4th 1165, and our decision in *Foxborough* v. *Van Atta* (1994) 26 Cal.App.4th 217 [31 Cal.Rptr.2d 525].

In *Hensley,* the plaintiff sued her attorney for inducing her to enter into an unfavorable binding marital settlement agreement. (*Hensley* v. *Caietti, supra,* 13 Cal.App.4th at pp. 1167-1168.) The plaintiff argued that she did not sustain actual injury until the effective date of the ensuing judgment in the dissolution action. (*Id.* at pp. 1173-1174.) The *Hensley* court disagreed: "Negligent legal advice which induces a client to enter into a binding contract resolving marital property and support issues results in actual injury at the point of entry. Entering a contract is a jural act which alters the legal relations of the parties and creates an obligation. [Citation.] The tortious inducement to enter into a contract which imposes noncontingent obligations

is actionable at the time of contracting." (*Id.* at p. 1175.) The agreement in *Hensley* operated immediately to deprive the plaintiff of certain property; the judgment simply provided a different means of enforcing the obligations the agreement already imposed. (*Id.* at pp. 1175-1176.) Thus, the settlement agreement marked the point at which the damage from the alleged malpractice occurred. (*Ibid.*; see *Niles, supra,* 9 Cal.4th at p. 255.)

In *Foxborough,* we addressed the issue of actual injury in a claim for transactional legal malpractice. (*Foxborough* v. *Van Atta, supra,* 26 Cal.App.4th at pp. 222-223.) Unlike the circumstances in *Niles,* though, in *Foxborough* a determination of whether the attorney erred—and thus injured the client—was not contingent on the outcome of subsequent litigation. (Compare *Niles, supra,* 9 Cal.4th at pp. 248-249, 252-253, 258, with *Foxborough* v. *Van Atta, supra,* 26 Cal.App.4th at pp. 222-223, 226-227.)

In *Foxborough,* the plaintiff employed the attorney to secure, among other things, certain automatic development rights for property it purchased. (*Foxborough* v. *Van Atta, supra,* 26 Cal.App.4th at p. 222.) Contrary to the plaintiff's expectations and desires, the automatic development rights expired. (*Id.* at pp. 222-223.) As a result, the plaintiff had to resort to a more expensive and uncertain process to attempt the property's development. (*Id.* at pp. 223, 227.) Soon after, the plaintiff sued the property's seller for not notifying it that the unrestricted development rights would expire; the plaintiff lost that suit four and a half years later. (*Id.* at p. 223.) The plaintiff contended that the attorney's alleged malpractice did not cause actual injury until the plaintiff lost its suit against the seller and failed to recoup its losses. (*Id.* at p. 225.) We found that actual injury occurred when the automatic development rights expired, stating, ". . . when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred. [Citations.]" (*Id.* at p. 227.)

Although James's advice allegedly caused Aldis to give Nancy a quitclaim deed to the Robinson Creek Road property, the deed meets neither *Hensley*'s nor *Foxborough*'s standards for actual injury. The property was Aldis and Deanna's community property, so Aldis's transferring it to Nancy without Deanna's consent was voidable. The transfer also exposed Aldis to possible liability for breach of the duty of good faith or breach of fiduciary duty. (See *Droeger* v. *Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 30 [283 Cal.Rptr. 584, 812 P.2d 931]; *In re Marriage of Baltins, supra,* 212 Cal.App.3d at pp. 89-91; Fam. Code, §§ 721, subd. (b), 1102, subd. (a), 2102.) However, the Baltinses sustained no injury immediately upon the property's transfer. That

action created only a potential for adverse consequences unless Deanna challenged the transfer and the trial court ruled against the Baltinses. By itself, the quitclaim deed did not effect the loss of a right, remedy, or interest, and did not constitute the imposition of a liability. (See *Foxborough* v. *Van Atta, supra,* 26 Cal.App.4th at p. 227.) Instead, it presented only a threat of future harm—not yet realized—that was insufficient to create a cause of action and thereby end the tolling of the limitations period under section 340.6, subdivision (a)(1). (See *Budd, supra,* 6 Cal.3d at pp. 200-201.)

The amended complaint alleged that James negligently advised the Baltinses in September 1984, and that nine years later their actions in reliance on that advice resulted in an adverse judgment in the dissolution action.[13] On its face, then, the amended complaint presents a cause of action similar to those in *Niles* and *Feddersen.* Under the Baltinses' allegations, any error in James's advice was not determinable, and had no effect, until following his advice resulted in the adverse judgment in the dissolution action. (See *Feddersen, supra,* 9 Cal.4th at pp. 619-620; *Niles, supra,* 9 Cal.4th at pp. 257-258.) The 1993 dissolution judgment therefore is the earliest actual injury disclosed by the pleadings and materials before the court on the demurrer.

The amended complaint states a cause of action that is not barred by section 340.6. Neither the amended complaint, nor the original complaint, nor the matters before us through judicial notice, establish that the Baltinses sustained actual injury as a result of the alleged malpractice more than four years prior to the time that they filed suit. Therefore, we conclude that the trial court erred in sustaining the demurrer and dismissing the amended complaint.

## DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court for further proceedings. The Baltinses shall have their costs on appeal.

Merrill, J., and Corrigan, J., concurred.

---

[13]Although Nancy alleged she incurred attorney fees in being joined as a party for the property rights determination, that occurred less than a year before James was sued. In any event, those initial attorney fees incurred to oppose Deanna's claims against her would not be sufficient "actual injury" within the meaning of section 340.6, subdivision (a)(1). (*Niles, supra,* 9 Cal.4th at pp. 252-253.)