[No. B030936. Second Dist., Div. Five. Jan. 11, 1991.]

CARL H. AMSTONE et al., Plaintiffs and Appellants, v.
PENINSULAR FIRE INSURANCE COMPANY et al., Defendants
and Respondents.

COUNSEL

Buxbaum & Chakmak, John Chakmak and Betty O. Yamashiro for Plaintiffs and Appellants.

Hosp, Richard & Granieri and Francisco J. Nicholas for Defendants and Respondents.

---

**OPINION**

**ASHBY, Acting P. J.**—Appellants Carl H. Amstone and Doris W. Amstone filed an insurance bad faith lawsuit against numerous insurance companies and insurance agents, collectively hereinafter referred to as "respondents."[1] The lawsuit claimed respondents wrongfully refused to pay insurance benefits to appellants for personal property lost in a fire. In a summary judgment motion respondents claimed appellants had no standing to bring the suit. Respondents contended the only individuals entitled to bring the action were the trustees in appellants' bankruptcy actions. The court granted respondents' summary judgment motion ruling appellants lacked standing. ■ ■■ ■■ ■ We reverse.[2]

FACTS

■ Following the usual rules on appeal, we construe the facts most favorable to appellants, the parties who opposed the summary judgment motion. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

Respondents issued a policy of insurance covering appellants' dwelling located in West Covina, California, and the personal property contents located therein. The policy provided $36,500 coverage for unscheduled personal property.

On March 19, 1982, appellants filed separate petitions for chapter 7 bankruptcy liquidation. Appellants each attached a schedule B-2 and a schedule B-4 to the petitions. On these documents, appellants valued household goods, supplies and furnishings at $3,000, and wearing apparel, jewelry, firearms, sports equipment and other personal possessions at $1,000. Appellants claimed as exempt (pursuant to former Civ. Code, §§ 1260,

---

[1] Respondents on appeal, as named in the complaint and amendments thereto, are Peninsular Fire Insurance Company, R. Ina Lazu, United Southern Assurance Company, Occidental Fire and Casualty Company of North Carolina, and Western General Agency.

[2] No formal judgment was entered, but the order granting respondents' motion for summary judgment was obviously intended as a final disposition. The matter has been fully briefed and in the interest of judicial economy we treat the order granting summary judgment as incorporating a final judgment. (*Snow* v. *A. H. Robins Co.* (1985) 165 Cal.App.3d 120, 125 [211 Cal.Rptr. 271].)

1263, and former Code Civ. Proc., §§ 690.1 and 690.2) their residential real property (value $45,000), household furniture and furnishings at the premises (value $3,000) and a 1967 Cadillac convertible (value $1,000). The insurance policy was not claimed as an asset. No creditors filed objections to the petitions.

On April 27, 1982, the trustee issued a report indicating both bankruptcy matters were "no asset" cases and that he had "no objections to the exemptions claimed."

On July 10, 1982, a fire destroyed appellants' home and the personal property contained therein. Under the contract of insurance, appellants submitted claims to respondents. In August and September 1982, respondents paid appellants the sum of $67,648.17 for loss of the dwelling and $2,320 for loss of rent. At no time did appellants inform the bankruptcy court they had received these funds from respondents. On September 15, 1982, appellant Doris W. Amstone's bankruptcy case was closed. On November 3, 1982, respondents informed appellants there was concern about misrepresentations appellants made to respondents regarding who occupied the premises on the day of the fire. Based upon these concerns, respondents refused to pay $15,540 appellants claimed for loss of their personal property. On November 22, 1982, the bankruptcy case of appellant Carl Amstone was closed.

Appellants filed the within action claiming respondents breached their obligations under the insurance contract by not paying for the loss of appellants' personal property. Subsequently, the court granted respondents' summary judgment motion based upon the contention that appellants lacked standing to file the suit. In ruling on the motion, the court indicated "they received ins. [*sic*] proceeds and didn't inform trustee before close of bankruptcy." We reverse.

## DISCUSSION

■ The issue in this state civil suit becomes: do appellants have standing to pursue claims for refusal to pay insurance proceeds for the loss of their personal property even though they filed bankruptcy petitions? We hold that appellants may assert claims regarding their personal property. Respondents' contention that only the trustee has a right to assert a claim under the insurance policy is not persuasive.

■ Persons have standing to sue when they are real parties in interest. (Code Civ. Proc., § 367.) ■ Usually properties and causes of action existing at the time bankruptcy petitions are filed pass to the bankruptcy

estate (11 U.S.C. § 541(a)(1); *Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822, 829-837 [69 Cal.Rptr. 321, 442 P.2d 377]; *People* v. *Kings Point Corp.* (1986) 188 Cal.App.3d 544, 548 [233 Cal.Rptr. 227]) and only the trustee has standing to bring actions related thereto. (*Reichert* v. *General Ins. Co.*, *supra*, 68 Cal.2d at p. 830; see 4 Collier on Bankruptcy (15th ed. 1985) § 541.12, p. 541-75.) However, there are situations in which the bankrupt debtor may also be a party in a state civil action. For example, if the trustee abandons property the bankrupt may bring suit with regard to that property. (*Estate of Aldrich* (1950) 35 Cal.2d 20, 23 [215 P.2d 724, 19 A.L.R.2d 885]; for further discussions see *Wood* v. *Lowe* (1974) 39 Cal.App.3d 296 [114 Cal.Rptr. 69]; *Highlanders, Inc.* v. *Olson* (1978) 77 Cal.App.3d 690, 697-701 [143 Cal.Rptr. 679]; *Danielson* v. *ITT Industrial Credit Co.* (1988) 199 Cal.App.3d 645, 655-658 [245 Cal.Rptr. 126].) Further, if a plaintiff has a pending suit and subsequently files for bankruptcy, the debtor is not automatically foreclosed from continuing to prosecute the action. (Code Civ. Proc., § 385; *Kaley* v. *Catalina Yachts* (1986) 187 Cal.App.3d 1187, 1193-1196 [232 Cal.Rptr. 384]; *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66, 78-80 [240 Cal.Rptr. 423]; *ABA Recovery Services, Inc.* v. *Konold* (1988) 198 Cal.App.3d 720, 726 [244 Cal.Rptr. 27].) Debtors may also be authorized by the bankruptcy court to file state civil actions. (Cf. *Tarr* v. *Merco Constr. Engineers, Inc.* (1978) 84 Cal.App.3d 707, 713-716 [148 Cal.Rptr. 813].)

In footnotes two California cases courts have refrained from expressing opinions on a debtor's right to bring an action relating to exempt property. (*Wood* v. *Lowe, supra*, 39 Cal.App.3d at p. 302, fn. 11; *Robinson* v. *McGinn*, *supra*, 195 Cal.App.3d at p. 79, fn. 5.) ■ We hold that when rights derive from property claimed as exempt, the claims arose after a bankruptcy petition was filed, and the bankruptcy court determines the property to be exempt, the debtor has standing to litigate causes of action with regard to that property.

In *Lewis* v. *Thompson* (Bankr., M.D.Md. 1983) 28 B.R. 351 (*Lewis II*), the debtors filed a chapter 7 petition for bankruptcy listing as exempt $400 in household furnishings, household goods, wearing apparel, and various appliances. They also valued other personal property at $3,500. A week later, their residence and personal property contained therein were destroyed by fire. The debtors submitted to their insurance company an itemized list for the personal property lost in the fire stating the retail price for all the property totalled $95,329.03. The issue before the court was whether the debtors were entitled to receive $43,500, the maximum amount of insurance coverage, for the personal property. The court acknowledged that the substantial discrepancy in property values gave the impression of concealment. However, after taking testimony, the court made factual findings that

no fraud existed. In holding that the debtors were entitled to the insurance proceeds, the court stated: "Under the new Bankruptcy Code, all the debtor's property becomes property of the bankrupt estate until it is listed for exemption without objection. *See* 11 U.S.C. §§ 522 and 541. Therefore, the fire insurance proceeds, paid to the trustee, are property of the bankrupt estate at least initially. We, however, think that if the debtors could have exempted the property before the conflagration, they are now entitled to the fire insurance proceeds. 'The general rule is that the (debtor's) exemptions are determined as of the time of the filing. 11 U.S.C. § 522(b).' [Citation.] At the time the debtors filed their petition, their property existed as property available for the exemptions before the postpetition fire destroyed it. We therefore hold that the debtors are entitled to the proceeds from their fire insurance policy in compensation for the loss of their exempt property." (*Lewis* v. *Thompson, supra,* 28 B.R. at p. 354.)[3]

*In re Snow* (Bankr., E.D.Cal. 1982) 21 B.R. 598 also discusses exempt property and its significance with respect to insurance claims brought when property is destroyed after a petition for bankruptcy is filed. There the debtor's bankruptcy petition claimed, pursuant to California law, one homestead exemption (value $40,000) and a household furnishings and supplies exemption (value $1,500). No creditor objections were filed. After a fire destroyed the home, the debtor attempted to amend the petition to claim an additional homestead exemption and to change the amount of the household exemption to approximately $20,000. The court refused to allow the debtor to amend the petition to include the additional homestead exemption. However, the court held that since no objections were filed regarding the claim of exemption for the household furnishings, those assets were deemed to be exempt and because title was vested in the debtor before the fire, the debtor was entitled to the insurance proceeds derived from the loss of that property. (*Id.* at p. 601.) The court noted that the property listed on bankruptcy forms was valued at its fair market value whereas claims to insurance companies may be based upon replacement value. Thus, the court determined the debtor was entitled to all insurance proceeds for the destroyed personal property even though that sum far exceeded the value originally listed in the bankruptcy petition. (*Ibid.; Matter of Rutherford* (Bankr., W.D.Mo. 1986) 73 B.R. 665 [debtor claimed exemption of $565 for household goods, thereafter a fire destroyed the property, debtor entitled to $13,008 in insurance proceeds for the destruction of the personal property]; *In re Taylor* (Bankr., S.D.Ohio E.D. 1982) 23 B.R. 539 [personal property destroyed after bankruptcy filed, debtor entitled to insurance proceeds limited only by maximum amount in state exemption statute].)

---

[3] In *Lewis* v. *Thompson* (Bankr., M.D.Pa. 1983) 30 B.R. 741 (*Lewis III*), the court reduced the amount awarded to the debtor and held that the trustee was entitled to that percentage of the proceeds allocated to nonexempt property.

Appellants' claims regarding their destroyed personal property did not exist at the time their petitions were filed. The fire which destroyed appellants' property occurred after appellants' bankruptcy petitions were filed, after appellants claimed certain personal property as exempt, and after the trustee indicated he had no objections to the claimed exemptions. (Cf. *Gering* v. *Superior Court* (1951) 37 Cal.2d 29 [230 P.2d 356].) Because no objections were filed, appellants' personal property was exempt from the bankruptcy court and title vested in appellants rather than the bankruptcy estate. (*Payne* v. *Wood* (7th Cir. 1985) 775 F.2d 202, 204.) Once the bankruptcy court determined the property was exempt, any insurance proceeds derived therefrom, or a cause of action based upon respondents' failure to pay the insurance proceeds, belonged to appellants. Upon destruction the exempt personal property simply changed form from tangible assets into insurance proceeds.

■ Respondents suggest appellants committed fraud on the bankruptcy court because appellants did not list the insurance policy as an asset, because appellants did not inform the bankruptcy court of the insurance proceeds they received for loss of their home and its rental value, and because the values listed on the bankruptcy petitions were substantially lower than those listed on the insurance claim. The trial court, in ruling appellants lacked standing, appears to have accepted this argument when the court stated "they received ins. [*sic*] proceeds and didn't inform trustee before close of bankruptcy." By so holding, the trial court inappropriately resolved a triable issue of fact on summary judgment.

We first note that had the bankruptcy court been informed appellants committed fraud, as asserted by respondents, the bankruptcy court had the power to withhold insurance proceeds to prevent a windfall to them and to assure a fair result. (E.g., *Lewis* v. *Thompson* (Bankr., M.D.Pa. 1982) 21 B.R. 282 (*Lewis I*) [bankruptcy court may limit insurance proceeds on exempt property if debtors conceal]; *In re Fox* (Bankr., W.D.Pa. 1987) 80 B.R. 753; *Payne* v. *Wood, supra,* 775 F.2d 202; cf. *In re Crownover* (Bankr., E.D.Mo. 1984) 43 B.R. 22.) However, as a state court we do not have jurisdiction to determine the property was not exempt. Further, summary judgment is only appropriate if there are no triable issues of fact. (Code Civ. Proc., § 437c.) Here, the facts could lead to contrary conclusions. The difference between the amounts claimed on the bankruptcy petitions and the amount requested under the insurance policy could have been the difference between fair market value and replacement cost. There are numerous reasons, not amounting to fraud, which could explain why appellants failed to list the policy as an asset on the bankruptcy petitions and failed to inform the bankruptcy court of the insurance proceeds they received.

By this conclusion, we are not determining whether or not appellants committed fraud upon the bankruptcy court and we are not determining whether or not proof of fraud may be a defense to appellants' claims for bad faith against respondents. Further, we are not deciding if appellants will be entitled to all insurance proceeds derived from the loss of their personal property or if they must hold the proceeds in trust for their creditors. Our conclusion is only that appellants have standing to assert a cause of action against respondents for refusing to pay insurance proceeds for the loss of the personal property.

The judgment is reversed. Costs on appeal are awarded to appellants.

Boren, J., and Turner, J., concurred.