On November 30, 2001, Robert Anthony Crider and Alecia Wren Crider sued Misty Acres, Inc., J.B. Boots Hill Real Estate 
Construction Co., Coldwell Banker J.B. Boots Hill Real Estate, Dennis Johnson, J.B. Hill, Bill J. Smith, Tom Miller, and Buell Deese (hereinafter collectively referred to as "the defendants"). The lawsuit arose out of the Criders' purchase of a *Page 1167 
lot in the Misty Acres subdivision and the construction of a house on the Criders' lot. The Criders alleged negligence, wantonness, breach of warranty, fraud, breach of contract, and continuous tort. The Criders demanded a jury trial, and sought compensatory damages, punitive damages, postjudgment interest, and attorney fees. The Criders did not seek a specific amount in damages, but their lawsuit was filed in circuit court, which does not have jurisdiction in a civil action unless the amount in controversy exceeds $10,000, exclusive of interest and costs. See § 12-11-30(1), Ala. Code 1975.
On October 17, 2002, while the lawsuit was pending, the Criders filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the United States Bankruptcy Code. A debtor seeking protection under the bankruptcy code must disclose all assets or potential assets to the bankruptcy court. 11 U.S.C. § 521(1) and § 541(a)(7). "Chapter 7 allows a trustee to collect and liquidate a debtor's assets, if any, in exchange for a discharge of the debtor's debts." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284 n. 1 (11th Cir. 2002). The Chapter 7 schedule-of-assets form specifically asked the Criders to report any contingent or unliquidated claims of any kind. In a section of the schedule-of-assets form entitled "Schedule B-Personal Property," the Criders listed "Lawsuit Pending In Cullman County Alabama Against Coldwell Bankers; Et Al" as "other personal property of any kind not already listed." The Criders valued the lawsuit at $2,500. In a section of the schedule-of-assets form entitled "Schedule C-Property Claimed As Exempt," the Criders listed "Lawsuit Pending in Cullman County Alabama Against Coldwell Bankers; Et Al." In Schedule C, the Criders claimed that the lawsuit was exempt from the bankruptcy estate and, thus, was protected from their creditors, pursuant to § 6-10-6, Ala. Code 1975. In Schedule C, the Criders valued the lawsuit at $2,500. We note that the statement-of-financial affairs form, filed in the Chapter 7 case, asked the Criders to list all lawsuits to which Robert or Alecia is or was a party within one year of filing for bankruptcy. The Criders answered "none." On April 16, 2003, the bankruptcy court granted a discharge to the Criders under11 U.S.C. § 727 of the bankruptcy code.
On May 7, 2003, the defendants in this lawsuit filed a "Joint Motion for Summary Judgment, Alternatively, Motion to Transfer Case to Small Claims Court." In their motion, the defendants argued that the Criders lacked "standing" to maintain this lawsuit because, they alleged, the lawsuit vested in the bankruptcy trustee for the Criders' bankruptcy estate. They also argued that the Criders were judicially estopped from prosecuting this lawsuit because of the Criders' failure to disclose the potential value of the lawsuit in the bankruptcy proceeding. Relying on the $2,500 valuation stated in the bankruptcy proceeding, the defendants sought, in the alternative, to transfer the lawsuit to small claims court. The Criders filed a brief in opposition to the motion, wherein the Criders claimed that they were "in the process of reopening their bankruptcy petition to provide complete and accurate information regarding this civil action."[1] On June 11, 2003, the trial court entered a summary judgment in favor of the defendants. The Criders appeal. This case was transferred *Page 1168 
to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
An appellate court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion. Pryor v. Brown Root USA, Inc.,674 So.2d 45, 47 (Ala. 1995); Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988). A summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact. Id. In determining whether the evidence creates a genuine issue of material fact, this Court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wayne J.Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala. 1993). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
The first issue we must address is whether the Criders are the proper parties to continue to pursue this action. The defendants argue that the Criders do not have "standing" to pursue this lawsuit on behalf of the bankruptcy estate.
In Battle v. Alpha Chemical Paper Co., 770 So.2d 626
(Ala.Civ.App. 2000), the defendant challenged the Chapter 7 bankruptcy debtor's right to maintain her cause of action against the defendant after filing a petition for bankruptcy. This court addressed whether the bankruptcy trustee, rather than the debtor, was the real party in interest, with the exclusive right to maintain a civil action against the defendant. We stated:
 "We use the term `real party in interest,' rather than `standing,' for a reason. Although both the parties and the trial court have blurred the issue[3] by referring to Battle's `standing,' the question whether a party has standing to sue is distinct from whether he or she is the real party in interest. While the real-party-in-interest principle directs attention to whether the plaintiff has a significant interest in the particular action he or she has instituted, standing requires that the plaintiff demonstrate an injury to a legally protected right. State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1027-28 (Ala. 1999); accord, Sprague v. Sysco Corp., 97 Wash.App. 169, 175, 982 P.2d 1202, 1205 (1999), review denied, 140 Wash.2d 1004, 999 P.2d 1262 (2000) (table). Here, Battle has standing to sue because Alpha's alleged breach of contract injured her, not the bankruptcy trustee. Sprague, 97 Wash.App. at 175, 982 P.2d at 1205; Hammes v. Brumley, 659 N.E.2d 1021, 1030 (Ind. 1995).
 "A number of cases have held that once a proceeding has been initiated under Chapter 7 of the Bankruptcy Code involving a debtor, the trustee in bankruptcy becomes the real party in interest with respect to lawsuits upon causes of action held by the debtor. See, e.g., Bickford v. Ponce de Leon Care Ctr., 918 F.Supp. 377 (M.D.Fla. 1996); Ex parte Moore, [793] So.2d [762] (Ala. 2000) (distinguishing Chapter 13 cases, although *Page 1169 
using `standing' terminology). However, there are two significant exceptions recognized to that principle of law: if the trustee abandons a cause of action, or if the bankruptcy court authorizes the debtor to maintain it in lieu of the trustee, the real party in interest is the debtor and not the trustee. For example, the United States Court of Appeals for the Fifth Circuit ruled in Dallas Cabana, Inc. v. Hyatt Corp., 441 F.2d 865 (5th Cir. 1971), that a civil action brought by a debtor against a corporation and its president, alleging that the defendants had fraudulently caused the debtor to become bankrupt, could not be maintained by the debtor in its own name. In so ruling, the Fifth Circuit held that the bankruptcy trustee's failure to assert a cause of action was not alone sufficient to authorize a finding of abandonment, but that the debtor could petition the bankruptcy court to authorize it, the debtor, to sue. 441 F.2d at 868; accord, Baker v. Data Dynamics, Inc., 561 F.Supp. 1161, 1165
(W.D.N.C. 1983); People v. Kings Point Corp., 188 Cal.App.3d 544, 549, 233 Cal.Rptr. 227, 230 (1986).
 "In this case, the bankruptcy court specifically authorized [the debtor] to maintain her action against [the defendant]. [The debtor] sought leave from the bankruptcy court to continue . . . in the district court, and the bankruptcy court granted her leave to do so. Once that leave was granted, [the debtor] was the real party in interest with the right to sue [the defendant]. . . .
 "[3]We note that this court has, on occasion, similarly blurred this issue. E.g., Cooks v. Jim Walter Homes, 695 So.2d 19 (Ala.Civ.App. 1996) (using `standing' terminology), which was overruled by Ex parte Moore, [793] So.2d [762](Ala. 2000), as it applied to Chapter 13 debtors."
770 So.2d at 634-35.
Our supreme court in Ex parte Sterilite Corp. of Alabama,837 So.2d 815 (Ala. 2002), addressed whether a Chapter 7 debtor, rather than the bankruptcy trustee, had standing to pursue the debtor's personal-injury action in state court against a company alleged to have negligently or wantonly loaded a trailer, causing the debtor emotional and physical injuries from merchandise falling on him when he opened the door of the trailer. The supreme court held that the debtor had standing because the company's alleged negligence or wantonness injured the debtor, not the bankruptcy trustee. The supreme court noted that parties and the courts had "blurred the issue" of "standing" and "real party in interest." 837 So.2d at 818. However, the supreme court did not address whether the debtor was the real party in interest because the defendant did not raise that argument in its petition for a writ of mandamus.
In the present case, the Criders had standing to maintain this action. However, the issue is who is the proper party to litigate this claim, the Criders or the bankruptcy trustee. Under11 U.S.C. § 541(a)(1), commencement of a bankruptcy action creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." This includes causes of action owned by the debtor. In re Louden,106 B.R. 109 (E.D.Ky. 1989). Until the property is listed as exempt, it has no exempt status and the bankruptcy trustee has exclusive authority to assert any cause of action that is the property of the estate. Ball v. Nationscredit Fin. Serv. Corp.,207 B.R. 869 (N.D.Ill. 1997). *Page 1170 
Property may be exempted from the bankruptcy estate pursuant to11 U.S.C. § 522. Section 522(b)(2) allows for exemptions available under state law. Here, the Criders sought to exempt the lawsuit, with a claimed value of $2,500, pursuant to § 6-10-6, Ala. Code 1975.[2] The debtor must "list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007." Rule 4003(a), Fed.R.Bankr.P. The trustee may file an objection to the list of the property claimed as exempt within 30 days after the creditors' meeting. Rule 4003(b), Fed.R.Bankr.P. If no interested party objects, the property claimed as exempt is exempt. 11 U.S.C. § 522(l). In Taylor v. Freeland Kronz, 503 U.S. 638,112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the United States Supreme Court interpreted 11 U.S.C. § 522(l) and Rule 4003, Fed.R.Bankr.P., strictly, holding that if no interested party timely objects to the claimed property exemptions, then the trustee is prevented from challenging the validity of the exemptions. In the present case, the Criders listed the lawsuit as exempt property, without objection from any interested party.[3] "If a cause of action that preexisted the filing of the bankruptcy petition is exempted from the estate or abandoned by the trustee, then it is property of the debtor and the debtor will have standing to pursue the cause of action in his or her own name." Ball,supra, 207 B.R. at 872, citing Rowland v. Novus Fin. Corp.,949 F.Supp. 1447 (D.Haw. 1996); see also In re Tippins,221 B.R. 11 (N.D.Ala. 1998) (chapter 13 debtors had "standing" to pursue claim against creditors for their alleged fraud, though causes of action arose prepetition and were included in the "property of the estate," where debtors had amended their bankruptcy schedules postconfirmation, with no objection by any party in interest, in order to claim those causes of action as exempt); Ogunwo v. American Nat'l Ins. *Page 1171 Co., 936 P.2d 606 (Colo.Ct.App. 1997) (summary judgment improper where debtor had "standing" to bring cause of action after bankruptcy trustee approved exemption of property);Patrick v. Alphin, 825 S.W.2d 11 (Mo.Ct.App. 1992) (debtor who was injured in an automobile accident was real party in interest in his personal-injury lawsuit, even though he had filed for bankruptcy, where personal-injury claim was exempted from the bankruptcy estate); Amstone v. Peninsular Fire Ins. Co.,226 Cal.App.3d 1019, 277 Cal.Rptr. 260 (1991) (bankruptcy debtors had "standing" to maintain bad-faith failure-to-pay lawsuit against insurer where debtors claimed personal-property exemptions totaling $8,000 and bankruptcy court exempted the property, but thereafter fire destroyed the property and debtors claimed a value of $15,540).
While the Criders may pursue the lawsuit in their own name, the next question is whether the Criders should be barred from pursuing the lawsuit based on the doctrine of judicial estoppel. The purpose of the doctrine of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the "exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749-50,121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The party asserting judicial estoppel does not have to prove reliance on or damage from the estopped party's previous legal proceeding and does not have to have been a party to the previous legal proceeding. Our supreme court in Ex parte First Alabama Bank, 883 So.2d 1236, 1246
(Ala. 2003), "embrac[ed] the factors set forth in New Hampshirev. Maine and join[ed] the mainstream of jurisprudence in dealing with the doctrine of judicial estoppel." In Ex parte FirstAlabama Bank, the supreme court held:
 "The United States Supreme Court in New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968
(2001), recently observed that `"[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle"' and then identified several factors as informative in determining the applicability of the doctrine of judicial estoppel. 532 U.S. at 750-51, 121 S.Ct. 1808 (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). The Court held that for judicial estoppel to apply (1) `a party's later position must be "clearly inconsistent" with its earlier position'; (2) the party must have been successful in the prior proceeding so that `judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled"' (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982)); and (3) the party seeking to assert an inconsistent position must `derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.' 532 U.S. at 750-51, 121 S.Ct. 1808. No requirement of a showing of privity or reliance appears in the foregoing statement of factors to consider in determining the applicability of the doctrine of judicial estoppel."
883 So.2d at 1244-45.
Courts in Alabama have held that a plaintiff is judicially estopped from bringing a cause of action in state court that was not timely listed in his bankruptcy proceedings as at least a contingent asset. Bertrand v. Handley, 646 So.2d 16 (Ala. 1994); Luna v. Dominion Bank of Middle Tennessee, Inc.,631 So.2d 917 (Ala. 1993). In Bertrand and Luna, the supreme court held that a noncreditor defendant was entitled to a summary judgment based upon *Page 1172 
the debtor-plaintiff's previous failure to list the cause of action as an asset in the bankruptcy schedules.
In the present case, the Criders disclosed the lawsuit in their bankruptcy petition, claiming that it was worth no more than $2,500, and the lawsuit was subsequently exempted from the bankruptcy estate, without objection from any interested party. In contrast to the debtors in Bertrand and Luna, the Criders disclosed the lawsuit to the bankruptcy court. The defendants suggest that the Criders committed fraud upon the bankruptcy court when they valued the lawsuit at $2,500. However, as a state court, we do not have jurisdiction to determine whether the Criders' valuation of the exempted cause of action was proper. The issue before us is whether the $2,500 value placed on the lawsuit should prevent the Criders from pursuing the lawsuit where it is conceivable that they might, if a jury finds in their favor, receive more than $2,500 in damages. Judicial estoppel "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts." RyanOperations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996). There is no evidence indicating that the Criders attempted to mislead the bankruptcy court when they notified the court of the contingent claim and placed a value on that claim or that seeking damages over $2,500 would result in a miscarriage of justice where the bankruptcy trustee knew of the nature of the lawsuit and the lawsuit was exempted from the bankruptcy estate, without objection from any interested party.
Judge Pittman's special writing concurring in the result citesCaplener v. United States National Bank of Oregon, 317 Or. 506,857 P.2d 830 (1993), for the proposition that the Criders should be limited to the $2,500 value placed on the lawsuit in the bankruptcy proceedings. However, Caplener is factually distinguishable. In Caplener, the defendant bank was the debtors' main creditor. The debtors did not dispute in their bankruptcy petition the bank's claim of a secured debt of $317,000, and the debtors stipulated to that amount in order to obtain postpetition financing. Before the debtors in Caplener
filed for bankruptcy, they had filed a claim against the bank for an alleged breach of an agreement to lend money. In their bankruptcy proceeding, they had disclosed that claim as a contingent asset, valued at $451,000. After their debts had been discharged in bankruptcy, the debtors amended their complaint to allege new claims against the bank and sought damages of over $11 million. In determining whether the doctrine of judicial estoppel barred the additional claims and damages, the Oregon Supreme Court held that the debtors' failure to dispute the bank's claim in bankruptcy, their stipulation as to the validity of the bank's claim in order to obtain postpetition financing despite the fact that a portion of the bank's claim was related to the very transaction that was at issue in the debtors' complaint, and their failure to disclose the full amount of their claim against the bank was "fundamentally at odds" with their subsequent claims against the bank for $11 million. 317 Or. at 520,857 P.2d at 839. That court ruled that the debtors were estopped to assert claims for damages in excess of $451,000. In the present case, the Criders complaint did not seek a specified amount of damages and they are not seeking to amend their complaint after being discharged in bankruptcy, in order to seek additional damages. Unlike the debtors in Caplener, the Criders' state-law claims against the defendants are not based on the same *Page 1173 
alleged conduct that brought the Criders into bankruptcy court. The doctrine of judicial estoppel should not be used to bar the Criders' claims or to obtain a transfer of their claims to small claims court.
Based on the foregoing, the judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, J., concurs.
THOMPSON and MURDOCK, JJ., concur in the result, without writing.
PITTMAN, J., concurs in the result, with writing.
[1] The Criders did not attach any evidence in support of their contention that they were in the process of reopening their bankruptcy proceeding. We note that 11 U.S.C. § 350(b) permits the reopening of a closed bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause."
[2] Section 6-10-6 provides:
 "The personal property of such resident, except for wages, salaries, or other compensation, to the extent of the resident's interest therein, to the amount of $3,000 in value, to be selected by him or her, and, in addition thereto, all necessary and proper wearing apparel for himself or herself and family, all family portraits or pictures and all books used in the family shall also be exempt from levy and sale under execution or other process for the collection of debts. No wages, salaries, or other compensation shall be exempt except as provided in Section 5-19-15
or Section 6-10-7."
[3] The United States Court of Appeals for the Eleventh Circuit has held that when a Chapter 7 trustee fails to challenge the valuation of a debtor's claimed exemption within the 30-day period provided in Rule 4003(b), Fed.R.Bankr.P., the debtor is entitled to the entire value of the property claimed as being exempt even if the actual value exceeds the amount of the claimed exemption. In re Green, 31 F.3d 1098 (11th Cir. 1994). InGreen, the Chapter 7 debtor listed in her personal-property schedule, under the heading "[c]ontingent and unliquidated claims of every nature," a lawsuit arising from an automobile accident, which, she claimed, had a value of one dollar. 31 F.3d at 1098. The debtor claimed the value of the lawsuit as exempt. The bankruptcy trustee conceded that he understood that the one dollar valuation represented a contingent value, and he specifically denied being misled into believing that the lawsuit had an actual value of one dollar. The bankruptcy trustee did not object to either the debtor's valuation of the lawsuit or her exemption of the lawsuit. The trustee eventually settled the lawsuit for $15,000, after which the debtor moved to have the entire amount of the proceeds disbursed to her. The bankruptcy court denied the motion. The district court reversed, determining that the debtor had exempted the entire value of the lawsuit and not just one dollar of its value. The Eleventh Circuit Court of Appeals affirmed, holding that a bankruptcy trustee may not wait until the value of a contingent claim is established before deciding whether to object to the debtor's claimed exemption.