Filed 8/12/22  A-List v. Salus Capital Partners CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| A-LIST INC. et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>SALUS CAPITAL PARTNERS, LLC,<br><br>     Defendant and Respondent. | B306617<br><br>(Los Angeles County<br>Super. Ct. No. BC630062) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Brown, Neri, Smith, & Khan, Amjad M. Khan and Patricia E. Tenenbaum for Plaintiffs and Appellants.

Greenberg Traurig, LLP, Scott D. Bertzyk, John F. Farraher Jr., Adil M. Khan and Michael E. McCarthy for Defendant and Respondent.

————————————————————

## INTRODUCTION

A-List Inc. and another corporation A-List later acquired, H-List Inc. (collectively, A-List), owned a retail brand called Kitson. A-List and its founder, Fraser Ross, sued one of A-List's lenders, Salus Partners LLC, alleging Salus took control of and mismanaged A-List's business operations. The trial court granted Salus's motion for summary judgment for one of the two reasons Salus argued it was entitled to judgment as a matter of law. The court ruled that, because Ross no longer owned shares in A-List, he did not have "standing" or "authority" to direct A-List to file the lawsuit and that therefore neither Ross nor A-List had standing to assert the causes of action in the complaint. A-List (but not Ross) appeals from the ensuing judgment in favor of Salus. We affirm the judgment, but for the other reason Salus moved for summary judgment, which the trial court did not reach: A-List lacked standing to bring its causes of action because it had assigned them to a third party.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *A-List Struggles Financially and Enters into an Assignment for the Benefit of Creditors*

Ross founded the Kitson retail brand in 2000 and formed A-List to operate Kitson fashion boutique stores. According to Ross and A-List, the company began to suffer financially after Ross had a serious illness in 2012. A-List and Salus subsequently entered into a credit agreement, in which Salus agreed to loan A-List up to $15 million, depending on the value of A-List's inventory and intellectual property.

Ross eventually transferred his shares in A-List to Christopher Lee, who was A-List's chief executive officer at the time. After Lee left A-List (Lee says he resigned; Salus says he was fired), A-List hired James Wong as chief financial officer and chief restructuring officer and passed a resolution authorizing Wong to "determine . . . whether it [was] desirable and in the best interest" of A-List and its creditors to "commence a sale or liquidation process, including . . . entering into an Assignment for the Benefit of Creditors with a company of Wong's choosing . . . ." In December 2015 Wong signed, on behalf of A-List, an assignment for the benefit of creditors with Winter Harbor LLC. As part of the agreement, A-List assigned "in trust for the benefit of [A-List's] creditors generally, all of [A-List's] property and assets of every kind and nature . . ., including but not limited to . . . all choses in action (personal or otherwise) that are legally assignable together with the proceeds of any existing non-assignable choses in action" A-List later received.

B.   *Ross Files This Action Against Lee; Winter Harbor Files a Lawsuit Against Salus*

In August 2016 Ross (but not A-List) filed this action, initially naming Lee as the only defendant. Ross alleged Lee made "false representations to induce [Ross] to forego . . . opportunities" that would have been "beneficial to [Ross] and Kitson and instead, enter into a series of transactions" that benefitted Lee. Ross also alleged Lee mismanaged the Kitson businesses, causing the value of the companies to decrease.

Two months later Winter Harbor, in its capacity as A-List's assignee, sued Salus in the United States District Court for the Central District of California. Winter Harbor alleged Salus

3

breached a funding agreement that required Salus to pay, using proceeds obtained from liquidating A-List's assets, $2.3 million A-List owed the federal taxing authorities. Winter Harbor and Salus ultimately settled that action and, as part of the settlement, Winter Harbor and Salus released each other from all known and unknown claims they had against each other "with respect to [A-List] or the Assignment for the Benefit of Creditors related thereto . . . ."

C. *Ross Adds Salus as a Defendant and Settles With Lee; A-List Joins as a Plaintiff*

After Winter Harbor and Salus settled their lawsuit, Ross added Salus as a defendant in this action, along with two entities related to Salus, HGI Management Holdings, LLC, Salus's parent company, which Ross claimed "directed Salus's operations," and Spencer Spirit Holdings, Inc., which Ross alleged loaned A-List an additional $4 million after A-List obtained the loan from Salus.[1] Ross alleged Salus and Spencer later "assert[ed] direct operational control over Kitson," "failed to act in a commercially reasonable manner," and ran "the [c]ompany to ruin." In particular, Ross claimed that the two lenders engaged in a "strategy to pump up Kitson's inventory before liquidating" the company's assets by ordering "more inventory than Kitson could sell" and promising "the vendors that they would be paid upon the sale of their merchandise," but that the lenders instead

---

[1]     Ross later added as a defendant BHK Investments, LLC, an alleged alter ego of Spencer created to fund Spencer's loan to A-List.

4

"closed all Kitson stores, hired liquidation firms to monetize the inventory, and never paid the vendors . . . ."[2]

In July 2018 Ross and Lee reached a settlement where Lee agreed to transfer back to Ross some of the shares Lee claimed he still owned in A-List,[3] and Ross agreed to dismiss his causes of action against Lee. After the settlement, A-List joined the lawsuit as a plaintiff and with Ross filed the operative, third amended complaint. As relevant to this appeal, A-List asserted causes of action for negligence, breach of fiduciary duty, and constructive fraud against Salus (as well as the other lenders), based on the same alleged scheme by Salus and Spencer to increase Kitson's inventory and liquidate the business's assets.

---

[2]　A-List contends this type of scheme is "common among asset-based lenders" and is "known in the retail industry as 'pump and dump.'" The more common use of the phrase "pump and dump" is a kind of securities fraud where shareholders "[m]ake claims that artificially inflate ('pump up') the value of stock [they] own," "[g]ullible investors then buy the stock at inflated prices," and the original shareholders "sell high and bug out with the inflated difference in value." (*Kruss v. Booth* (2010) 185 Cal.App.4th 699, 703; see *United States v. Zolp* (9th Cir. 2007) 479 F.3d 715, 717 fn. 1 ["'Pump and dump' schemes 'involve the touting of a company's stock (typically microcap companies) through false and misleading statements to the marketplace. After pumping the stock, fraudsters make huge profits by selling their cheap stock into the market.'"].) A-List does not use the term in this sense.

[3]　As we will discuss, A-List and Salus dispute whether Lee still owned any shares to transfer to Ross.

D.    *The Court Grants Summary Adjudication on A-List's Causes of Action and Later Enters Judgment in Favor of Salus*

Salus and the other lenders filed a motion for summary adjudication on each of A-List's causes of action, asserting they were entitled to judgment as a matter of law for two reasons. First, they argued A-List did not have standing to assert its causes of action because it had assigned them to Winter Harbor as part of the assignment for the benefit of creditors. Second, they argued A-List did not have standing to assert its causes of action because Ross did not own shares in A-List and "therefore has no authority to direct Kitson to assert any claims." The lenders contended that, when Lee left A-List in 2015, A-List reacquired all of Lee's shares pursuant to a stockholders' agreement between Lee and A-List. Therefore, according to the lenders, Lee did not have any A-List shares to transfer to Ross when he agreed to do so in his settlement agreement with Ross.

The trial court granted the motion on the second ground. The court ruled that A-List reacquired Lee's shares when his employment ended and that Lee had no shares in A-List "to transfer to Ross in 2018 . . . ." Therefore, the court ruled, Ross did not have "the requisite authority to direct the claims asserted by" A-List against the lenders. The court declined to consider the lenders' alternative argument that, because A-List had assigned its causes of action to Winter Harbor, A-List lacked standing to assert those claims in this action.

Meanwhile, Salus had filed a cross-complaint against A-List, seeking to recover money A-List allegedly failed to repay under their credit agreement. After the court granted summary adjudication on A-List's causes of action, Salus's cross-complaint

6

remained pending. A-List and Salus, however, agreed to a stipulated judgment in favor of Salus and against A-List on the cross-complaint. In June 2020 the trial court entered the stipulated judgment on the cross-complaint, and in July 2020 the court entered judgment in favor of Salus and against A-List on the third amended complaint.[4] A-List timely filed a notice of appeal from the judgment on the third amended complaint.[5]

## DISCUSSION

A. *Applicable Law and Standard of Review*

"Summary judgment is appropriate only where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subd. (c); *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607.) "A defendant moving for summary adjudication of a cause of action must show that one or more elements cannot be established or," as relevant here, "that there is a complete defense." (*Clark v. Superior Court* (2021) 62 Cal.App.5th 289, 298; see *Regents*, at p. 618; *Mattei v.*

---

[4]     We augment the record pursuant to California Rules of Court, rule 8.155(a)(1)(A) to include the parties' stipulation and court's judgment in this action.

[5]     Spencer, BHK, and HGI are not parties to this appeal; they still have claims pending against A-List, and the trial court has not entered a judgment on any of those claims.

7

*Corporate Management Solutions, Inc*. (2020) 52 Cal.App.5th 116, 122.)

A "'"defendant moving for summary judgment based upon the assertion of an affirmative defense . . . 'has the initial burden to show that undisputed facts support each element of the affirmative defense' . . . .'"'" (*Shiver v. Laramee* (2018) 24 Cal.App.5th 395, 400; see *Severin Mobile Towing, Inc. v. JPMorgan Chase Bank, N.A.* (2021) 65 Cal.App.5th 292, 302; *Sumner v. Simpson University* (2018) 27 Cal.App.5th 577, 580.) If "the defendant meets that burden, the burden shifts to the plaintiff to show a triable issue of material fact regarding the defense." (*Filosa v. Alagappan* (2020) 59 Cal.App.5th 772, 778; see *Shiver*, at p. 400.)

We review a ruling on a motion for summary adjudication de novo (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273; *Michaels v. Greenberg Traurig, LLP (*2021) 62 Cal.App.5th 512, 520) and "decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law" (*Mattei v. Corporate Management Solutions, Inc*., *supra*, 52 Cal.App.5th at p. 122; see *Regents of University of California v. Superior Court*, *supra*, 4 Cal.5th at p. 618). We consider "'"""all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."'"'" (*Hampton v. County of San Diego* (2015)

62 Cal.4th 340, 347; see *Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 497.)

>  B.  *The Trial Court Did Not Err in Granting Salus's Motion for Summary Adjudication*

As discussed, the trial court ruled A-List "lacked standing" to bring its causes of action because Ross did not own shares in A-List and therefore did not have authority to direct A-List to bring this action.  The trial court's ruling on this issue was flawed.  Generally, "[p]ersons have standing to sue when they are real parties in interest."  (*Amstone v. Peninsular Fire Ins. Co.* (1991) 226 Cal.App.3d 1019, 1023; see *Pacific Gas & Electric Co. v. Superior Court* (2006) 144 Cal.App.4th 19, 23 ["Standing in a lawsuit is governed by Code of Civil Procedure section 367, which provides:  'Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.'"].)  Where a cause of action seeks redress for damage to a corporation, the corporation is the real party in interest and the proper party to assert the cause of action.  (See *Bader v. Anderson* (2009) 179 Cal.App.4th 775, 788 ["where conduct, including mismanagement by corporate officers, causes damage to the corporation, it is the entity that must bring suit"]; *PacLink Communications Intern., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 965 [""a corporation which suffers damages through wrongdoing by its officers and directors must itself bring the action to recover the losses thereby occasioned"""]; see also *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312 [even in a shareholder derivative action, the corporation "is the real party in interest to which any recovery usually belongs"].)  Here, A-List—the corporate entity—claimed Salus's mismanagement of

9

A-List's operations harmed the corporation. Regardless of whether Ross, A-List's alleged shareholder, is a real party in interest and has standing to bring claims under such a theory, A-List is and does.

Salus's challenge is actually not to A-List's standing, but to Ross's authority to manage A-List's affairs. Salus, however, cites no authority (and, as the trial court observed, Salus cited none in its motion) for the proposition a defendant may raise as a defense to a cause of action asserted by a corporation (which is the real party in interest) that a shareholder or other person "directed" the corporation to file the lawsuit without proper authorization. Indeed, California law does not allow such a defense. Corporations Code section 208, subdivision (a), states: "No limitation upon the business, purposes or powers of the corporation or upon the powers of the shareholders, officers or directors, or the manner of exercise of such powers, contained in or implied by the articles or . . . by any shareholders' agreement shall be asserted as between the corporation . . . and any third person . . . ." As the California Supreme Court has explained, this statute "restricts third parties from questioning the manner in which the corporate directors have exercised their powers, unless the third parties fall within" one of the exceptions listed in the statute, "such as the state when it is seeking to enjoin the continuation of unauthorized business, or the corporation is being dissolved" (*Snukal v. Flightways Mfg., Inc.* (2000) 23 Cal.4th 754, 787, fn. 14), neither of which applies here. Otherwise, "[o]nly a shareholder, officer, or director" may "bring suit to challenge a corporation's management or control." (*Korean Philadelphia Presbyterian Church v. California Presbytery* (2000) 77 Cal.App.4th 1069, 1083.) No purported shareholder, officer, or

10

director of A-List has filed a lawsuit, or sought to intervene in this one, to prevent A-List from asserting its claims against Salus. Salus has no basis to question the authority on which A-List brings this action. (See *id.* at pp. 1082-1083 [religious association could not challenge a preliminary injunction requested by a church on the ground the church's pastor "acted in excess of [his] authority" in seeking the injunction, where no "member of [the] board, nor any other member of the Church who oppose[d] [the pastor's] control of the board [was] a party to [the] case"].)

We can affirm the trial court's order granting summary adjudication, however, "'if it is correct on any ground the parties had an adequate opportunity to address in the trial court, regardless of the reasons the trial court gave.'" (*Wolf v. Weber* (2020) 52 Cal.App.5th 406, 410; see *Levya v. Crockett & Co.* (2019) 7 Cal.App.5th 1105, 1108-1109 ["'"we must affirm so long as any of the grounds urged by [defendants], either here or in the trial court, entitle [them] to summary judgment"'"].) And Salus's second argument entitled it to judgment as a matter of law: A-List lacked standing to bring its causes of action against

Salus because A-List previously assigned those causes of action to Winter Harbor.[6]

> ### 1. *Salus Met Its Burden To Show A-List Was Not the Real Party in Interest Because It Assigned Its Causes of Action to Winter Harbor*

As stated, Code of Civil Procedure section 367 provides that "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (See *Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, ___ [2022 WL 2286393, p. 8] [a "real party in interest is a 'person who possesses the right to sue under the substantive law'"].) The real party in interest may assign to another person a right to assert a cause of action. (Civ. Code, § 954; see *Casa Eva I*

---

[6] Code of Civil Procedure section 437c, subdivision (m)(2), provides that, "[b]efore a reviewing court affirms an order granting . . . summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs." Here, because the parties addressed the issue in their appellate briefs, supplemental briefing is not required. (See *Hooked Media Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323, 336, fn. 1 ["Because [the appellant] has been afforded an opportunity to present its views, no supplemental briefing is required."]; *Goddard v. Department of Fish & Wildlife* (2015) 243 Cal.App.4th 350, 359, fn. 5 ["supplemental briefing is not required" because the "plaintiffs directly addressed the issue in their briefs, and the [defendant] addressed it in its reply brief"]; *Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39 [where "defendants directly addressed the issue in their briefs, and plaintiffs addressed it in their reply brief," the "purpose of section 437c, subdivision (m)(2)" was "fully met"].) Nor has A-List requested supplemental briefing.

*Homeowners Assn. v. Ani Construction & Tile, Inc.* (2005) 134 Cal.App.4th 771, 782 [causes of action "are assignable when they arise out of an obligation or out of the violation of a right of property," italics omitted].)  Once the assignor has assigned a cause of action, """the assignee is the owner and has the right to sue on it,""" and """the assignor lacks standing to sue on the claim.""" (*California Bank & Trust v. Piedmont Operating Partnership, L.P.* (2013) 218 Cal.App.4th 1322, 1347; accord, *Searles Valley Minerals Operations Inc. v. Ralph M. Parson Service Co.* (2011) 191 Cal.App.4th 1394, 1402; see *Botsford v. Haskins & Sells* (1978) 81 Cal.App.3d 780, 784 ["An assignor may not maintain an action upon a claim after making an absolute assignment of it to another; his right to demand performance is extinguished, the assignee acquiring such right."]; *McCown v. Spencer* (1970) 8 Cal.App.3d 216, 225 [same].)

Salus presented undisputed evidence A-List transferred its causes of action to Winter Harbor in December 2015, eight months before Ross (initially without A-List) filed this action.  In the assignment for the benefit of creditors, A-List assigned to Winter Harbor "all of [A-List's] property and assets of every kind," including "all choses in action (personal or otherwise) that are legally assignable. . . ."  A-List did not join this lawsuit and assert its causes of action against Salus until nearly three years later, well after it assigned its causes of action (and in fact after Winter Harbor, pursuant to the assignment, filed and settled a lawsuit against Salus).[7]  Therefore, Salus met its moving burden

---

[7]    Salus also contends the general release in the Salus-Winter Harbor settlement agreement bars the claims asserted by A-List

13

to show A-List lacked standing.  (See *Botsford v. Haskins & Sells, supra*, 81 Cal.App.3d at pp. 783-784 [trial court properly granted summary judgment against a corporation where the corporation executed an agreement assigning to a trustee "all of its right, title and interest in and to all of its assets, of whatsoever nature and wheresoever situated," fn. omitted].)

> ### 2. *A-List Did Not Create a Triable Issue of Material Fact Regarding Whether Its Causes of Action Accrued After the Assignment*

A-List's primary argument is that it did not assign its causes of action to Winter Harbor (or that there are triable issues of fact regarding whether it did) because it assigned only causes of action that "existed" as of the date of the assignment and that its causes of action against Salus did not "accrue" until after it executed the assignment for the benefit of creditors.  Even assuming A-List intended to assign only "existing" causes of action, however, each of the causes of action A-List asserted in this action existed when A-List entered into the assignment for the benefit of creditors.[8]

"A cause of action is a legal obligation the plaintiff seeks to enforce against the defendant" that comes "into existence

---

in this action.  While A-List challenges the validity and scope of the assignment, as we discuss, A-List does not dispute that, if the assignment was valid, the release covered its claims.

[8]     As stated, the assignment provided that A-List was assigning, among other things, "all choses in action (personal or otherwise) that are legally assignable together with the proceeds of any existing non-assignable choses in action that be hereafter

14

or *arise[s]*" when "all the elements have been established." (*In re Marriage of Klug* (2005) 130 Cal.App.4th 1389, 1398; see *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 ["Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.'"]; *Cline v. Yamaga* (1979) 97 Cal.App.3d 239, 245 ["A cause of action arises when the liability or obligation is established and suit may be brought."].) "As a practical matter, a cause of action generally *arises* for the first time when the injury is suffered. [Citation.] Once injury occurs, the injured party has a property interest . . . ." (*Marriage of Klug*, at p. 1398.)

In each of its causes of action, A-List sought redress for wrongdoing by Salus, and for injury to A-List, that occurred before the December 2015 assignment. For example, in support of each cause of action, A-List alleged that in May 2013 (when Salus agreed to loan money to A-List) Salus failed to disclose it "lacked the commercial lending license required to lend in California," which caused A-List to agree to borrow money from Salus rather than pursue or accept a more lucrative purchase offer. A-List also alleged in support of each cause of action that Salus's scheme to pump up Kitson's inventory began immediately after A-List obtained the loan from Spencer in April 2015, which "culminated in the Fall of 2015" and caused damage to A-List by no later than several weeks before Christmas 2015.

A-List does not dispute that the elements of its causes of action existed when it entered the assignment agreement. A-List

---

received by [A-List]." Salus did not argue in the trial court, and does not argue on appeal, this language covers assignable claims that did not yet exist.

argues instead that, under the discovery rule, a cause of action does not accrue until a plaintiff knows or has reason to know of the cause of action and that there are triable issues of material fact regarding when A-List's officers and shareholders discovered Salus's wrongdoing.  A-List conflates when a cause of action "comes into existence or arises," i.e., when the party in interest "has a property interest" (*In re Marriage of Klug*, *supra*, 130 Cal.App.4th at p. 1398), with when the limitations period for bringing that cause of action begins to run.  "[A]ccrual of a cause of action in the sense of creation of an actionable claim is not the same as accrual for purposes of the statute of limitations. '[A] cause of action may be viewed in the eyes of the law as "accruing" for different purposes on different dates, depending on the purpose for which the accrual determination is being sought.'" (*Vanhooser v. Superior Court* (2012) 206 Cal.App.4th 921, 929; see *Nelson v. Flintkote Co.* (1985) 172 Cal.App.3d 727, 733 ["a statute of limitations is *procedural;* it affects the *remedy* only, not the substantive right or obligation"]; *Piazza Properties, Ltd. v. Department of Motor Vehicles* (1977) 71 Cal.App.3d 622, 628 [same].)  A-List's causes of action against Salus existed when A-List assigned all "legally assignable" causes of action to Winter Harbor, and A-List cites no authority for the proposition that a corporation may not or did not assign an existing cause of action solely because the corporation claims it didn't know of the cause of action's existence.  (See *Webb v. Pillsbury* (1943) 23 Cal.2d 324, 327 ["'assignability of things [in action] is now the rule; nonassignability, the exception'"]; *Times Out, LLC v. Youabian, Inc.* (2014) 229 Cal.App.4th 1001, 1011 [same].)

The analogous rules governing causes of action held by a trustee in bankruptcy are instructive.  "[W]hen a bankruptcy

petition is filed," an "'estate' is created" (*Cusano v. Klein* (9th Cir. 2001) 264 F.3d 936, 945), and such an estate is similar to the trust created by an assignment for the benefit of creditors. (See *Sherwood Partners, Inc. v. EOP-Marina Business Center, L.L.C.* (2007) 153 Cal.App.4th 977, 981-982 ["'[a]n assignment for benefit of creditors is a business liquidation device available to an insolvent debtor as an alternative to formal bankruptcy proceedings,'" where "'an insolvent debtor transfers his or her assets in trust to an assignee'"]; *Credit Managers Assn. v. National Independent Business Alliance* (1984) 162 Cal.App.3d 1166, 1169 [same].) The "[a]ssets of the estate properly include any of the debtor's existing causes of action" (*Cusano*, at p. 945), including "all causes of action that hypothetically could have been brought pre-petition," "even if the debtor[ ] w[as] unaware of the claim.'" (*Tyler v. DH Capital Management, Inc.* (6th Cir. 2013) 736 F.3d 455, 462; see March et al., Cal. Practice Guide: Bankruptcy (The Rutter Group 2021) ¶ 6:58 ["a cause of action is considered estate property even where the debtor is unaware of [the] claim during the course of the bankruptcy case"]; cf. *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1259 ["Under bankruptcy law, the trustee in bankruptcy receive[s] all causes of action that the bankrupt could have assigned."].) As one bankruptcy court has explained, there is a "distinction between the claim and substantive rights coming into existence ('acquired'), and the 'accrual' for the statute of limitations computation . . . . [¶] The application of [California's] Discovery Rule . . . does not determine whether the interest of the [d]ebtor (the rights against the third-party) exist, just that the (procedural) statute of limitations would not begin to run until the [d]ebtor and her [b]ankruptcy [e]state knew of the pre-

existing rights. . . ." (*In re Carroll* (Bankr. E.D.Cal. 2018) 586 B.R. 775, 789-790.) While a debtor may not "realize[ ] that she [has] a valid claim, . . . the claim (the legal interest) exist[s] nonetheless" and becomes "part of the [e]state." (*Id.* at p. 790; see *Cusano*, at p. 947 ["It is important . . . to distinguish principles of accrual from principles of discovery and tolling . . . for purposes of ownership in a bankruptcy proceeding."].) Here, too, A-List's causes of action against Salus existed when A-List assigned its causes of action to Winter Harbor, even if A-List did not know about them.

A-List also argues that Salus's allegedly wrongful conduct "continued" after the assignment and that A-List did not assign to Winter Harbor causes of action arising from conduct by Salus that occurred after the assignment. A-List cites no authority in support of this argument. Nor is it persuasive. Even if Salus's alleged misconduct continued after the assignment, Salus's claims arise from a single course of conduct by Salus that violated a single right of A-List; namely, Salus's scheme to take "direct operations control" over A-List "in a way that privileged [Salus's] interests" as a "lender[ ] and liquidator[ ] over the interests" of A-List. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 [A "'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action."].) Where, as here, "the series of injuries claimed . . . all trace to the same underlying conduct committed by the same defendant[ ], there is no basis to assign a later accrual date" to conduct that occurred after the initial

18

wrongdoing and injury. (*Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 338.) A-List's causes of action were complete with all of their elements before the assignment; A-List cannot split its causes of action to avoid the effect of the assignment. (See *id*. at p. 336 ["that damages accrued in stages, does not transform one primary right into many"]; *Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 634 ["""[a] single cause of action cannot be split either as to relief demanded or grounds on which recovery is sought"""].)

3.      *A-List Did Not Create a Triable Issue of Material Fact Regarding Validity of the Assignment*

Finally, A-List contends the assignment for the benefit of creditors was invalid (or at least there were triable issues regarding whether it was invalid) on two grounds. First, A-List argues that the assignment was "approved by a Board of Directors comprised of only one director," in violation of A-List's by-laws, and that the director "was conflicted because he [was] affiliated with the vendor hired to perform the liquidation sales" pursuant to the assignment. A-List cites no authority for the proposition that an assignment for the benefit of creditors approved by a sole director is "invalid" in either circumstance.[9]

---

[9]      Under certain conditions, a corporation may set aside contracts between the corporation and a third party in which a director of the corporation has a material financial interest. (See Corp. Code, § 310, subd. (a).) A-List, however, does not contend and did not present evidence its director in 2015 had a material financial interest in Winter Harbor, the entity to which A-List assigned its causes of action. Therefore, even if A-List's director

19

And California law is to the contrary. Corporations Code section 208, subdivision (b), provides: "Any contract or conveyance made in the name of a corporation which is . . . done within the scope of the authority, actual or apparent, conferred by the board or within the agency power of the officer executing it . . . binds the corporation, . . . ." More succinctly, "an officer can bind the corporation in dealings with third parties in which the officer has actual or *apparent* authority." (*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.* (2000) 83 Cal.App.4th 409, 421.) A-List presented no evidence that Wong, acting as A-List's chief financial and restructuring officer under a resolution passed by the board, lacked apparent authority when he executed the assignment for the benefit of creditors. Nor did A-List present evidence Winter Harbor knew any of A-List's directors had a purported conflict or were acting outside the scope of his or her authority under A-List's bylaws. (See *Newton v. Johnson Organ & Piano Mfg. Co.* (1919) 180 Cal. 185, 191 ["by-laws . . . are of no binding force upon third persons having no knowledge of them"]; *Aitken v. Stewart* (1933) 129 Cal.App. 38, 46 [same]; see Friedman et al., California Practice Guide: Corporations (The Rutter Group 2022) ¶¶ 4:342, 4:345 ["bylaw limitations generally have no effect on the rights of third parties dealing with the corporation," but are "effective in determining the liabilities of the officers *to the corporation*"])

Second, A-List argues the assignment for the benefit of creditors was invalid because Winter Harbor did not give notice

was "conflicted" because of his affiliation with a party hired to perform the liquidation sales, A-List did not create triable issues of material fact regarding whether the assignment for the benefit of creditors was invalid.

of the assignment to some of A-List's creditors, in violation of Code of Civil Procedure section 1802.[10]  A-List yet again cites no authority for its contention that failure to comply with section 1802 renders an assignment for the benefit of creditors invalid—at least as to the corporation.[11]  And again California law is to the contrary.  (See *Bumb v. Bennett* (1958) 51 Cal.2d 294, 299 [because assignments for the benefit of creditors "existed at common law, . . . it follows that" such assignments are not "invalid because they do not conform to the provisions of the Civil Code relating to statutory assignments for the benefits of creditors"];[12] cf. *Smith v. Harris* (1954) 127 Cal.App.2d 311, 316 ["[t]he general rule supported by the weight of authority holds

---

[10]  Code of Civil Procedure section 1802, subdivision (a), provides:  "In any general assignment for the benefit of creditors, . . . the assignee shall, within 30 days after the assignment has been accepted in writing, give written notice of the assignment to the assignor's creditors, equity holders, and other parties in interest . . . ."

[11]  A-List cites one case suggesting the assignment "would be void as to nonconsenting creditors" who did not receive the required notice (*Bernstein v. Equitable Discount Corp* (1935) 8 Cal.App.2d 265, 269), but no authority suggesting the corporation may invalidate the assignment and recover the assigned assets from the assignee.

[12]  The assignment between A-List and Winter Harbor states: "It is understood and agreed that this Assignment is a common law assignment for the general benefit of [A-List's] creditors."

that notice . . . to creditors of the assignor is not essential to complete the assignment" of a cause of action].)

## DISPOSITION

The judgment is affirmed. Salus is to recover its costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.